HESS v. CITRON et al.

(City Court of New York, General Term. February, 1902.)

1. MASTER AND SERVANT—WRONGFUL DISCHARGE—CONTRACT OF EMPLOYMENT—EVIDENCE—SUFFICIENCY.

Plaintiff, in an action against his employers for a breach of a contract of employment, testified that about two weeks preceding his discharge he entered into an oral contract with one of his employers for employment during the season, but such contract, and the conversation leading thereto, were denied by such employer. Plaintiff did not call defendant's attention to such contract when discharged, though plaintiff testified that he was told that the discharge was because business had been poor during preceding seasons. A witness for plaintiff, whose testimony was denied, testified that the latter introduced him to one of defendants, and stated in the presence of the latter that plaintiff had contracted for the season; but the witness did not state that defendant heard such statement, and could not identify defendant. Defendants introduced evidence that plaintiff was discharged for a conversion of goods discovered prior to the date of the alleged contract of employment. *Held* not sufficient evidence of the contract of employment to sustain a judgment for plaintiff.

2. SAME—OFFER OF SERVICES.

A servant discharged in violation of a contract of employment is not required to offer his service to his employer after such time in order to maintain an action for the wrongful discharge.

**3. SAME—DAMAGES—COMMISSIONS.**
   The measure of damages for the wrongful discharge of a salesman employed for the season on commission is the value of the commissions he may earn during the season.

**4. SAME—EVIDENCE—ADMISSIBILITY—FORMER EARNINGS.**
   Evidence of the commissions earned by a salesman while working on commission for the same employer during the preceding season is admissible in an action for wrongful discharge, as tending to show the probable earnings of the salesman.

Appeal from trial term.

Action by Rudolph Hess against Nathan Citron and another. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed.

Argued before CONLAN, O'DWYER, and HASCALL, JJ.

Johnston & Johnston (Edward W. S. Johnston, of counsel), for appellants.

Joseph Kohler, for respondent.

O'DWYER, J. The action was brought by the plaintiff to recover damages for an alleged breach of a contract of employment, and, in support of his claim, plaintiff testified that upon the evening of November 28, 1900, at a restaurant in Sixth avenue, he had a conversation with Nathan Citron, one of the defendants, as follows:

"I asked him how we stood for the next season, and he said, 'The same as before.' Then I asked him for a contract, and he said, 'We'll go on as in the former season, without any confab or argument.'"

It appears that the plaintiff was employed by the defendants for the three seasons preceding this alleged interview, and that for those seasons he did not receive a written contract of employment, but was employed by the defendants orally for the seasons in question. Why, in view of that fact, he should at this interview ask for a contract, no reason is advanced by him. On the 12th day of December following, the plaintiff was informed by the defendants that his services were not longer required, and upon receipt of that notice he called upon Nathan Citron, and had a conversation with him in regard to his relations with the firm; and he testifies with respect to what took place at this interview, as follows:

"I asked him what was the cause of such a letter. He said, 'I don't want your services from now on.' I said, 'What's the cause?' He said, 'We had bad seasons lately, or expenses were high, and we must reduce our expenses.' Then I said, 'Why should it lie upon my shoulders?' He said, 'It must come upon some one's shoulders, so we placed it upon your shoulders.' Then he said that he had a difference with one of his salesmen, and that he had reduced his salary; and he said further that, if I lay off one season, he would employ me the next year. To that I would not consent. I said to him that I did not see the reason why the loss should fall upon my shoulders. When he said that the loss had to fall somewhere, I asked him for an explanation, but he did not give me any. He said that he would not give me any samples to go out with for next season: 'You cannot do anything more here.' Then I told him that I would go to law about it, and he told me to do as I pleased about it."

If the defendant had the conversation in the restaurant testified to, with the plaintiff, on the 28th of November,—two weeks before

his discharge,—at that time they undoubtedly knew whether the business of the past season justified the re-employment of the plaintiff or not, so that when the plaintiff protested against his discharge, on or about December 12th, it is remarkable that he did not call the attention of the defendants to the lameness of the excuse which they were then offering, namely, that he was then discharged because of poor business the preceding seasons.

The first conversation testified to is the only evidence offered by the plaintiff in support of his claim that at that time a contract was made with him for the ensuing spring season of 1901. True, the plaintiff introduces a Mr. Nathan Schreiber, for the purposes of corroborating him with respect to his employment by the defendants for the season of 1901, but an examination of the testimony given by that witness fails to sustain the plaintiff's claim that it contains corroborating evidence. That witness testified that he recollected an occasion in November, 1900, meeting the plaintiff, in company with one of the firm of Citron Bros., upon Broadway; that he saw the plaintiff and one of the Citrons on that occasion; he is not certain which one it was. He further says:

"I would not recognize him now if I saw the gentleman I met on that occasion. On that occasion I was introduced to Mr. Citron by Mr. Hess. Something was said to me by Mr. Hess at the time. I met them on Broadway, near Eighth street. as I was going home, and it was about half-past six o'clock; and as we approached I said, 'Hello, Ruddy [meaning the plaintiff], how is it going?' He said, 'All right, I have just made a big sale of $4,000 to Simpson, Crawford & Simpson.' Mr. Citron was with him, and then he said, 'I have also made a contract for the next season with Citron Bros.' Then he called up Mr. Citron, and introduced him to me. Q. Was that said by Mr. Hess in a voice so that Mr. Citron could have heard it? A. I heard it. We all heard it, I suppose. Mr. Citron did not say anything when Mr. Hess said that he made a new contract with Citron Bros.,—not a word."

Nathan Citron denies absolutely ever having the conversation with the plaintiff in the restaurant on November 28, 1900, and denies ever having met Mr. Schreiber, or ever having heard or taken part in any such conversation as he describes; and, in view of the witness' inability to identify Nathan Citron as the person to whom he was introduced, his testimony is no corroboration of the plaintiff; and in fact the plaintiff himself is silent as to such an occurrence, and there is no proof that the man introduced to this witness was one of the defendants.

The plaintiff was bound to sustain his contention by a fair preponderance of the evidence, and as the evidence stands, with respect to the making of the alleged contract of employment for the season of 1901, he has failed to do so. Upon that question the testimony was merely oath against oath of two interested witnesses; the plaintiff asserting the conversation, and the defendant denying that it ever took place. The defendants, however, were not content to rest their case upon this condition of the evidence, but, after denying the making of the alleged contract, claimed that they had, prior to the time when plaintiff claims such further employment was agreed upon, discovered the abstraction by him of goods belonging to them, which

he had not accounted for or charged himself with, and that it was because of that conduct they discharged him; that such cause for his discharge was known to them prior to the time when they are claimed to have made this alleged contract of re-employment; and in this contention they are supported by the testimony of four disinterested witnesses.

Upon the whole testimony we are satisfied that the verdict was against the weight of evidence, and the ends of justice will be subserved by the submission of the case to another jury. For the purposes of the new trial, we desire to say, that the objections urged with respect to the time of the commencement of the action, and to the evidence of the commissions earned in the spring of 1900, are without merit. If the contract was entered into, then, clearly, there was a breach on the part of the defendants on the 12th of December, if plaintiff was discharged without cause. After notice that his services were no longer required, there was no necessity for the plaintiff to thereafter offer his services to the defendants. The value of the contract to the plaintiff would be the commissions that he might earn during the spring season, and the earnings of the preceding spring season would be competent evidence from which the jury might determine the amount of the possible earnings during the new term. The judgment and order appealed from are reversed, and a new trial ordered, with costs to the appellants to abide the event.

Judgment and order reversed, and new trial ordered, with costs to appellants to abide event. All concur.