D. S. Anderson et al., v. Pan American Motors Corporation et al. (Herschell-Spillman Motor Company, Appellant, Pan American Motors Corporation and Edward Danner and The Millikin Trust Company, co-receivers, Appellees.)

Gen. No. 7,692.

1. SALES—*buyer's payment of overcharge as bar to counterclaim in seller's action for damages for breach.* In an action by the seller for damages for breach of a contract for the manufacture and sale of automobile motors at a stipulated price subject to adjustment for fluctuations in the cost of materials, labor and overhead, a counterclaim by receivers of the buyer for overcharges on motors delivered and paid for by the buyer before the receivership was properly disallowed where the evidence shows the alleged overpayments to have been made by the officers of the buyer with knowledge that the price was greater than that agreed upon in the contract because of adjustments for increased cost and that the officers not only made no objection but acquiesced in the advance.

2. SALES—*liquidation and receivership of buyer as breach of contract.* Breach by the buyer of a contract for the purchase of automobile motors to be manufactured and delivered by the seller in a specified number per month is shown, although there was no tender of the motors by the seller, where the evidence shows that at the time of the alleged breach the buyer, a manufacturer of automobiles and trucks, had ceased doing business except to supply parts for cars actually in use, had substantially closed its plants, and the directors had taken steps to wind up its affairs and receivers had been appointed to close up its affairs.

3. DAMAGES—*damages ascertainable by computation not conjectural.* In an action by the seller of automobile motors against the buyer for breach of contract by failure to perform after part of the stipulated number of motors had been delivered and paid for, under a contract which called for delivery of a specified number of motors at a stated price per motor, such price to be increased or decreased as the cost of labor, materials and overhead expense fluctuated, it was error to allow nominal damages only on the theory that cost of the motors at the time of breach was uncertain and conjectural for want of evidence as to cost at the time of execution of the contract, where there is evidence in the contract and by authorized admissions by agents of the buyer from which the approximate cost to the manufacturer at the date of the contract can be computed, and also the cost at the date of the breach,

4. DAMAGES—*compensatory damages for breach of sale contract allowable where minimum amount ascertainable.* In an action by the manufacturer and seller of automobile motors against a buyer under contract to buy a stated number of motors at a stated price to be increased or decreased as the cost of labor or materials fluctuated, plaintiff was entitled to recover its actual damages under Cahill's Ill. St. ch. 121a, ¶ 67, relative to damages and the measure thereof for breach of a sales contract by the buyer's refusal to accept and pay for the goods, and it was error to allow nominal damages only where there was evidence from which the minimum amount of damages could be ascertained approximately, even though the exact amount was not shown, since recovery is not dependent upon whether plaintiff's manufacturing plant could have been operated at a profit during the period, where loss resulted from the breach.

Appeal by plaintiff from the Circuit Court of Macon county; the Hon. JAMES S. BALDWIN, Judge, presiding. Heard in this court at the October term, 1923. Reversed and remanded with directions. Opinion filed January 10, 1924.

VAIL, POGUE & ALLEN, for appellant.

MILLS BROTHERS and WHITLEY & FITZGERALD, for appellees.

MR. PRESIDING JUSTICE HEARD delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Macon county awarding only nominal damages on the claim of appellant filed in the receivership of the Pan American Motors Corporation pending in such court. The claim was for $40,800, for damages arising from a breach of a contract to manufacture automobile motors. The claim was objected to by the receivers and a counterclaim for $920.70 for a claimed overcharge on certain motors received and paid for was filed by the receivers. The counterclaim was objected to by appellant. A reference to the master in chancery was had and the evidence taken before him. The master in chancery filed a report disallowing the counterclaim of the Pan American Motors Corpora-

tion and allowing $10 nominal damages to appellant and disallowing the remainder of the claim on the sole ground that the damages were conjectural and speculative and could not be estimated with reasonable certainty.

The receivers have assigned cross errors upon the record in this court and contend that appellant has no standing in the Illinois courts for the reason that the record discloses that appellant is a corporation organized under the laws of the State of Massachusetts and has not qualified nor is it admitted to do business in this State. They contend that the evidence shows that in at least five different instances appellant transacted business in this State and that it is barred from maintaining this action by reason of section 94 of the Corporation Law of this State [Cahill's Ill. St. ch. 32, ¶ 94] which provides: "No foreign corporation doing business in this State without a license shall be permitted to maintain any suit at law or in equity in any of the courts in this State upon any demand, whether arising out of contract or tort," etc. We have examined the evidence as to each of these instances and find that the evidence does not show that appellant did business in the State of Illinois, as the term "doing business in the State of Illinois" has been construed and interpreted by the courts of this State.

It is likewise contended by the receivers that the court erred in disallowing the counterclaim of the receivers.

The Pan American Motors Corporation had its factory and chief place of business in Decatur, Illinois. In December, 1921, the company had ceased to do business except to supply parts for automobiles actually in use, had substantially closed its plant, and its directors had passed a resolution that the best interests of the stockholders required that the corporation be dissolved and its affairs wound up, and had called a stockholders' meeting for January 17, 1922, for the

purpose of dissolving the corporation.

On January 12, 1922, certain preferred stockholders filed their bill in the circuit court of Macon county to dissolve the corporation and prayed for the appointment of a receiver. Edward Danner, the former president of the company, and the Millikin Trust Company of Decatur were appointed receivers by the court on January 24, 1922, and took possession of the property.

An order was entered that claims against the company be filed within a given time and notice of such order be given to creditors. Within the time limited the Herschell-Spillman Motor Company, a corporation having its chief place of business and manufacturing plant at North Tonawanda, New York, filed its claim in the sum of $40,800. The claim was objected to by the receivers and a counterclaim for $920.70 for a claimed overcharge on certain motors received and paid for was filed by the receivers. The counterclaim was objected to by claimant, Herschell-Spillman Motor Company. A reference to the master was had and the evidence taken before him.

The claim of the Herschell-Spillman Motor Company was a claim for damages for breach of a contract between it and the Pan American Motors Corporation. On November 10, 1919, the two companies entered into a contract for the manufacture by claimant and the sale to the Pan American Motors Corporation of 1,000 motors for automobiles at $225 each. Subsequently by supplemental agreement the number of motors to be manufactured was increased. At the time of the receivership there still remained to be manufactured and delivered 824 motors under these contracts. The original contracts called for the delivery of the motors bought at the rate of 150 motors per month, the last motors to be delivered in December, 1920. At the request of the Pan American Motors Corporation the time for the delivery of these motors was postponed, and no motors had been delivered for

a considerable time prior to the receivership though the contract was admittedly still in full force calling for the 824 motors still undelivered. Under the terms of the original contract, the price of the motors was based upon the then current costs of material, labor and transportation, and was subject to adjustment to correspond with fluctuation in such costs. Subsequently, by agreement between the parties, adjustments were to be made only quarterly.

At the time the evidence began to be taken a stipulation was entered into between the parties respecting certain of the facts involved. By such stipulation it was agreed that 824 motors remained undelivered under the contracts, that the cost of the material, of the direct labor and of the total overhead burden were given amounts upon April 1, 1920, June 1, 1920 and July 1, 1920. The market cost price of the material to manufacture the motors on January 1, 1922, was stipulated as well as the direct labor cost up to February 28, 1922. In addition, the cost of the direct labor actually employed in claimant's factory in January and in February, 1922, was stipulated, and the amount of its total overhead incurred each of these months in the conduct of its business was stipulated.

It is the claim of the receivers that on July 16, 1920, August 13, 1920 and August 28, 1920, the Pan American Motors Corporation, on each date, paid to appellant the sum of $256 in excess of the proper contract price for motors and that on May 7, 1921, they paid $152.43 in excess of the contract price thereof. Their claim is that the officers of the corporation had no knowledge as to what the price was except as shown by the statements sent to them by appellant. This contention, however, is not borne out by the evidence, as on April 3, 1920, Edward Danner, the president of the corporation, wrote to appellant after receiving notice of the raise in price effective April 1, 1920: "The raise in price is entirely satisfactory to the officers of this Corporation and we firmly believe that

you are entitled to the advance, and I am just a little afraid that your price is hardly high enough at $235.00." And F. R. Peebles, director of purchases of the corporation, wrote appellant April 8, 1920, with reference to that same raise in price: "We, of course, regret it is necessary for you to make this advance in price, but we realize the condition under which you are working."

In *Goddard Tool Co. v. Crown Electrical Mfg. Co.,* 219 Ill. App. 34, it was held that in a suit on a contract for the manufacture of articles on a basis of the cost of the material, plus ten per cent and a certain amount per hour for labor employed thereon, that where the evidence showed that from time to time during the performance of the contract plaintiff sent defendant invoices describing the goods shipped, the amount charged for material, the number of hours for which charge was made, and the total amount due on the shipment, and the defendant retained the bills without questioning them until pressed for payment, the account was an account stated and that the defendant had the burden of overcoming it by competent proof.

In the present case, not only was there no objection made by the Pan American Motors Corporation to the invoices sent to them, but they paid them. Under the circumstances as shown by the evidence in the present case, the receivers cannot now go behind the voluntary payments made to appellant. The report of the master and the order of the court approving the same, disallowing the counterclaim of the receivers, were correct.

It is next contended by appellee that there was no breach of the contract. The Pan American Motors Corporation had its factory and chief place of business in Decatur, Illinois. In December, 1921, the company had ceased to do business except to supply parts for automobiles actually in use, had substantially closed its plants, and its directors had passed the reso-

lution that the best interests of the stockholders required that the corporation be dissolved and its affairs wound up.

A final decree was entered on February 24, 1922, in the receivership proceedings continuing the receivership, directing the receivers to sell all the personal property and bring the proceeds into court. The order found that the corporation had ceased doing business and that the company could not proceed with the manufacture of automobiles or trucks and that the court would not continue the business of the company except a certain department, known as the service department, and ordered the receivers to proceed to wind up the company's affairs. January 31, 1922, the receivers notified appellee that the board of directors had decided to wind up the affairs of the corporation and that receivers had been appointed for the company.

The law does not require the doing of a useless thing and while no tender of the motors was made by appellant, it is conceded by all that the contract was in full force and effect at the time of the appointment of the receivers and that there were 824 motors to be manufactured and delivered thereunder. Under the state of facts in this case, there can be no question but what the court was correct in its finding that there was a breach of the contract in question and that appellant was entitled to damages by reason thereof.

The main question in the case is whether or not, under the evidence in this case, appellant was entitled to the allowance of his claim to the extent of more than nominal damages. The master in chancery found that the cost to appellant of manufacturing the 824 undelivered motors, had the same been manufactured in the month of February, 1922, or at the rate of 150 per month beginning in February, 1922, is speculative and conjectural and cannot be estimated with any reasonable certainty other than that probable cost thereof would exceed the cost thereof by the purchaser, and it

is contended by appellant that this finding, which was approved by the court, was erroneous. Appellee contends that there is no evidence in the record as to the cost of materials and labor at the time of the execution of the contract and that, hence, it would be impossible to determine the price at any future time, the contract providing that fluctuations, upward or downward, of the costs of material or labor be added or subtracted from the price in the contract as the case may be. Appellee introduced much so-called expert testimony, to the effect that if a contract provides that the price is based upon present costs of material, labor and transportation and any fluctuation in the price of such items shall be added or subtracted from the price named in the contract, it is impossible to determine the price at any time unless the cost of labor, material and transportation at the time of the execution of the contract is known. Just how this self-evident proposition became a subject for expert testimony we are unable to determine.

The fallacy of appellee's contention is that the evidence does show the cost of labor and material at the time of the making of the contract.

Whenever a party to a suit desires to prove the existence of any fact material to the issue in the case, it is not necessary to introduce the evidence of persons who know the existence of such fact, but such fact may be proven just as conclusively by the admission of the opposite party or by his agents authorized to make such admission.

The contract in question was signed by both parties and was the statement, therefore, of appellee as well as appellant and is an admission by appellee that the price named in the contract was based on the present costs of material, labor and transportation. The cost of transportation does not enter into the matter for the reason that the contract called for a delivery f. o. b. Tonawanda, New York. On March 31, 1920, appellant sent to the Pan American Motors Corpora-

tion an itemized statement showing the increase in the cost of material entering into the motor and gave to them notice that by reason thereof, in accordance with the terms of the contract, the price per motor would be increased $10. In reply to that letter the president of the Pan American Motors Corporation and the director of purchases of such corporation wrote the letters to which we have heretofore referred, which letters constitute an admission on their part that since the date of the contract in question, the cost of labor and materials entering into the manufacture of each motor was $10. The cost of the labor and material entering into the manufacture of a motor on April 1, 1920, is fixed by stipulation and if you deduct $10 from the price fixed by the stipulation you have the admitted price of the cost of material and labor upon the date of the contract, and it is therefore only a matter of computation as to what the selling price in February, 1922, would be.

Hundreds of pages of testimony were taken upon this subject, upon the question as to whether or not the appellee's plant had been operated at a profit or at a loss; as to whether or not, if the 824 motors had been manufactured by appellant in February, 1922, the plant would have been operated at a profit or at a loss; much evidence as to what constitutes overhead expenses; and as to what varieties of overhead expense are proper to be figured in estimating the cost at which an article must be sold in order to secure a profit; much argument as to the allocation of costs and many other questions which are not the vital questions in this case, which is, was appellant damaged by the breach of the contract, and, if so, to what extent?

Section 67 of chapter 121a of the Revised Statutes of Illinois [Cahill's Ill. St. ch. 121a, ¶ 67] provides: "(1) Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for nonac-

ceptance. (2) The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract. * * * The profit the seller would have made if the contract or the sale had been fully performed shall be considered in estimating such damages."

It will be seen, therefore, that it is immaterial whether or not, if the 824 motors had been manufactured during the month of February, 1922, the plant would have been operated at a profit, but the question is, was appellant damaged by reason of the Pan American Motors Corporation refusing to carry out the contract and, if so, what loss directly and naturally resulted in the ordinary course of events from appellee's breach of the contract?

It is undoubtedly the law that damages which are uncertain, contingent and speculative in their nature cannot be made the basis of recovery, but under the evidence in the case appellant's damages are not of that nature. In 17 C. J. 756, it is said:

"The rule against the recovery of uncertain damages generally has been directed against uncertainty as to cause rather than uncertainty as to measure or extent. In other words, the rule against uncertain or contingent damages applies only to such damages as are not the certain results of the breach, and not to such as are the certain results but uncertain in amount. In many cases, although substantial damages are established, their amount is, in so far as susceptible of pecuniary admeasurement, either entirely uncertain or extremely difficult of ascertainment; in such cases plaintiff is not denied all right of recovery, and the amount is fixed by the jury in the exercise of a sound discretion under proper instructions from the court."

In Williston on Contracts, sec. 1345, the requirement of certainty is stated thus:

"Though any breach of contract entitles the injured party at least to nominal damages, he cannot recover more without establishing a basis for an inference of

fact that he has been actually damaged. A mere possibility that the plaintiff might have made a profit if the defendant had kept his contract will not justify damages based on the assumption that the profit would have been made. But though substantial damage must be shown in order to justify recovery of more than a nominal sum, the exact amount need not be. Where it is clear that substantial damage has been suffered, the impossibility of proving its precise limits is no reason for denying substantial damages altogether. Under this principle, profits that the plaintiff would have made if the contract had been carried out may be recovered if their loss was a proximate and a natural consequence of the breach, and any reasonable method of estimation is possible, even though the exact amount of profit to have been anticipated is necessarily uncertain.''

In *Barnett v. Caldwell Furniture Co.*, 277 Ill. 286, it is said:

''A recovery may be had for prospective profits when there are any criteria by which the probable profits can be estimated with reasonable certainty. * * * It is perhaps true that absolute certainty as to the amount of loss or damage in such cases is unattainable, but that is not required to justify a recovery. All the law requires is that it be approximated by competent proof. That proof of the exact amount of loss is impossible will not justify refusing compensation. If that were the law, contracts of the kind here involved could be violated with impunity. All the law requires in cases of this character is that the evidence shall with a fair degree of probability tend to establish a basis for the assessment of damages. *Landis v. Wolf*, 206 Ill. 392; *Illinois Cent. R. Co. v. Byrne*, 205 Ill. 9; *Chapman v. Kirby*, 49 Ill. 211; *Wakeman v. Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205; *Hess v. Citron*, 37 N. Y. Misc. 849, 76 N. Y. Supp. 994; *Cross v. Florsheim*, 102 N. Y. App. Div. 498, 92 N. Y. Supp. 832, *Ætna Life Ins. Co. v. Nexsen*, 84 Ind. 347; *City of Terre Haute v. Hudnut*, 112 Ind. 542; *Spencer Medicine Co. v. Hall*, 78 Ark. 337.''

The evidence in the case shows that while appel-

lant's business had greatly fallen off prior to February, 1922, by reason of cancellation of orders and the breach of contracts similar to the breach in the present case, the nucleus of the organization, both in the executive and production departments, was maintained and that at no time did the company's operations entirely cease; that in February, 1922, the executive organization included the officers of the company, the heads of the various departments of the firm, officers, clerks, stenographers, accountants, etc., and the factory organization consisted of the manager, superintendents, assistants, all the foremen, service inspectors, etc. While in previous years these employees did not do any actual work, in February, 1922, they did direct labor. The evidence also shows the price of direct labor in the plant in February, 1922, and the costs of material at that time. It also shows that at that time direct labor in the manufacturing of motors in the community where the plant was situated was plentiful and readily to be obtained, and there is no contradictory evidence in the record as to the amount of the additional expense to which appellant would have been put had the 824 motors been manufactured in February, 1922, and the following months.

Much space is devoted in the testimony and in the argument as to what overhead charges should be figured in arriving at the cost of the article. Those questions are undoubtedly proper questions to consider when attempting to ascertain whether a business is being conducted at a profit or a loss, or as to what the selling price of an article should be in order to produce a profit, but the question here is, in how much better condition would appellant have been, with his factory practically idle, had they been permitted to manufacture the 824 motors?

While the evidence in the case may not show to a dollar the exact amount of damages sustained by appellant, it does show that it was damaged by reason

of the breach of the contract to at least many thousands of dollars and there is basis in the evidence for a finding of the minimum amount of such damages.

The judgment of the circuit court is reversed and the cause remanded with directions to the court below to reconsider the question of appellant's damages upon the proof contained in the master's report and such other evidence as either party may see fit to introduce.

*Reversed and remanded with directions.*