## The Warner Construction Company, Appellee, v. The Commissioners of Lincoln Park, Appellant.

### Gen. No. 37,081.

Opinion filed December 19, 1934. Rehearing denied and opinion modified January 9, 1935.

James M. Slattery, of Chicago, for appellant; William H. Beckman and George E. Woods, both of Chicago, of counsel.

Chester E. Cleveland, of Chicago, for appellee.

Mr. Presiding Justice Hebel delivered the opinion of the court.

This is an appeal by the Commissioners of Lincoln Park, a municipal corporation, as defendants, from a judgment of the superior court of Cook county, Illinois, entered upon a verdict of a jury for $42,030.12, and is based upon a suit instituted by the plaintiff wherein the plaintiff filed the common counts on August 17, 1931, together with a bill of particulars claiming a total of $47,774.78, due from the defendant. Nine different items made up this total. The defendant filed a plea of the general issue with an affidavit of merits denying liability for the entire amount, except $1,000. No question is raised as to the materiality or form of the pleadings.

It appears from the facts in the controversy that the defendant advertised for bids for the construction of 38 sub-piers to support columns for the roadway forming the approach from Grand avenue to the bridge over the Illinois-Michigan Canal or Ogden Slip in the Lincoln Park District. The approach is one section of the Outer Drive Improvement. The sub-piers were in nine bents or rows running east and west and extending from the surface of the ground down to solid rock or a distance of roughly 115 feet. The various diameters were four feet and four feet six inches and five feet. Bent 18 was along the south wall of the North Pier Terminal Building. The unit price bid by the plaintiff and accepted by the Lincoln Park Commissioners, and as provided in the contract, was $1.43 per cubic foot for the six complete cylindrical piers in Bent 18 and $1.38 for the 32 complete cylindrical piers

in the other bents. The unit price in Bent 18 was higher, due to the possibility that shoring or underpinning might be necessary.

At the time the defendant advertised for bids for the construction of the described improvement, the Commissioners furnished the plaintiff a printed form of proposal with a blank space in which to furnish the price bid per cubic foot for the concrete piers. The plaintiff filled in the prices in such proposal, viz., $1.43 per cubic foot for the piers in Bent 18 and $1.38 per cubic foot for the piers in Bents 29 to 39 there being no Bent 37. These prices covered all the work and materials used in constructing the piers. The plaintiff also inserted in the blank for piers constructed under air pressure an additional $12 per cubic foot, which is almost eight times the cost of building them not under air pressure.

After this proposal was submitted to the Commissioners, the Warner Company, at the request of J. M. Egan, chief engineer for the Commissioners, wrote him a letter dated July 7, 1930, outlining how it, the plaintiff, proposed to do the work.

After July 7, 1930, the Warner Company received a communication from Hugh E. Young, another engineer for the Commissioners pursuant to which there was a meeting at Young's office of T. R. and T. L. Warner, representing the plaintiff, and Young, representing the Commissioners. At this meeting Young said the matter of handling the work had been taken out of his hands, but had been returned to him, and he wanted to be sure that the work was properly done and avoid, if possible, the use of air and that if air were used the cost would possibly be $1,000,000. Young then presented a typewritten paper which was tentatively a form of addenda and asked the Warners if they would be willing to do the work according to such addenda. The typewritten addenda as prepared by

Young, among others, contained the following paragraphs:

"That in the event that wood lagging is found to be impractical, to provide and drive in place a ring of steel piling or a steel shell around the tops of all cylindrical piers in this contract. This shall be of sufficient length to penetrate at least ten feet into non-water bearing soil and shall be at least two feet, and not greater than three feet larger than the plan diameter of each caisson. It shall be braced by steel rings, spaced at proper intervals, and made up of semi-circular arcs, bolted together at ends. . . .

"That under no circumstances shall compressed air be used for excavating or placing concrete in cylindrical piers, unless, in the opinion of the engineer, all other methods are impossible. Then it shall only be used on such caissons and to such depth as the engineer directs. . . .

"No extra compensation will be allowed for the use of the different methods of construction as indicated above."

Young, after giving a copy of the addenda to the representative of the plaintiff, asked if the plaintiff was willing to do the work in the manner provided in the addenda, and T. L. Warner asked to have the addenda so he could take it to their office and study it and give their decision the next day. This was permitted, and the next day the plaintiff, through its agent, returned the addenda to Young after changing it by substituting "impracticable" for "impossible" and inserting after the clause in Young's draft of the addenda, viz.: "No extra compensation will be allowed for the use of the different methods of construction as indicated above" the words, "other than actual sheeted areas which will be paid for on unit cubic feet prices."

On July 17, 1930, Young returned the addenda, as revised, to the Warner Company. On July 18, 1930,

the Warner Company signed the addenda as so revised and returned it to Young and it was embodied in its proposal.

On July 25, 1930, the formal contract was signed by the Commissioners of Lincoln Park and the Warner Company, by which contract the Warner Company agreed to do the work, and the Commissioners agreed to pay for it according to the proposal and addenda to proposal, the latter dated July 18, 1930.

From the plaintiff's bill of particulars it appears, in substance, that the claim was for work done by the plaintiff for the defendant under a contract in the sum of $7,189.61; that the sheeted area actually excavated by the plaintiff in and about constructing the six piers was 13,411.37 cubic feet for which the plaintiff was entitled to be paid by defendant at the rate of $1.43 per cubic foot, this amount being the difference between the amount charged by the plaintiff and the amount paid to the plaintiff by the defendant, and being the amount stated in the bill of particulars as unpaid; and also the further sum of $34,830.51, being the difference between the amount received by the plaintiff from the defendant and the amount due the plaintiff for work necessarily done in excavating the sheeted area by the plaintiff in and about constructing the 32 piers, for which the plaintiff was entitled to be paid at the rate of $1.38 per cubic foot, being the contract price.

It also appears from the bill of particulars that the plaintiff seeks to recover from the defendant the sum of $1,840 for work done in driving through a sunken boat, $897.28 for extra work for the removal of a submerged dock, and $1,000 which is due the plaintiff and retained by the defendant as security for repairing Illinois street, and which amount is admitted by the defendant to be due the plaintiff for this completed work.

The manner in which the excavation and concrete work was done on each of the piers was that there was a preliminary excavation at the surface of five or six or seven feet. The steel piling or steel shells were put together in circular form. The form was driven down to a depth of 10 feet into non-water bearing soil. The earth within this circle of steel was excavated. Arrangements were made to remove such water as seeped through the steel sheeting. Then, within the circle of steel, wood forms were set up, the inside of which was the size of the concrete piers. The concrete was poured into these wood forms. These wood forms were braced against the steel sheeting to make it true. After the concrete was set, the wood forms were removed. Then the space between the steel sheeting and the concrete pier was back-filled with earth and the steel sheeting pulled out.

The principal controversy was over the amount claimed by the plaintiff which was charged for the space between the steel sheeting and the concrete pier, and back-filled by the plaintiff after the concrete had set.

The theory of the defendant upon its appeal in this case is that the payment of the first two items set forth in the bill of particulars should be only for the cubic feet of concrete in place. The existence of the water-bearing strata down to clay was shown by plans and specifications furnished the plaintiff and other contractors at the time the defendant called for bids. The defendant could not dictate the method as long as satisfactory caissons were built, except that air could not be used unless directed by defendant's engineer. The addenda was in confirmation of the contract and the contract provided $1.43 and $1.38 per cubic foot for complete cylindrical piers, including the cost of excavation and the furnishing and placing of any sheet piling or steel shells where necessary, and any other work or material necessary to do this work.

The questions involved are based upon the written addenda attached to the contract. The original written addenda was submitted by the defendant and was modified by the plaintiff by adding these words, ''other than actual sheeted areas which will be paid for on unit cubic feet prices,'' after the words, ''No extra compensation will be allowed for the use of the different methods of construction as indicated above.''

From an examination of the record it is obvious that there is some conflict of opinion as to the technical meaning of the additional words used by the plaintiff, but in the construction of the language the words should be construed in the general acceptation of their use. The defendant contends, however, that the items for which claim is made for payment should be only for cubic feet of concrete in place; that the addenda was in confirmation of the contract, and the contract provided $1.43 and $1.38 per cubic foot for complete cylindrical piers, including the cost of excavation and the furnishing and placing of steel sheets where necessary and required. The figures are stipulated in the record without prejudice that if the plaintiff would offer proof it would show (1) there is due the plaintiff $7,199.61 for 5,034.69 cubic feet of space in Bent 18 at $1.43 and (2) $34,830.51 for 25,239.50 cubic feet of space in the other eight Bents at $1.38. In addition to these amounts, the defendant has admitted that $1,000 is due plaintiff, which was held by the defendant until the plaintiff made certain repairs—which have been done. The purpose in drafting the addenda was to make clear what was uncertain in the contract, and that was as to the size of the excavation and the method used necessary to make the excavation and the payment for the work. The form of the addenda was in all respects approved, except that the plaintiff did not agree, but amended the addenda so that the ''actual sheeted areas would be paid for in unit cubic feet prices.'' The purpose of the addenda was to exclude

extra compensation for all work done under the contract, except the plaintiff was to be paid for the actual work performed in the area within the sheeted pilings secured by steel rings of semicircular arc, bolted together at the ends in each of the bents in question. In construing the language it is clear that the plaintiff is entitled to recover for the work and to be paid at the cubic feet prices.

The defendant complains that the court erred in instructing the jury as follows:

"With respect to plaintiff's claim, based upon unit cubic feet prices, the court instructs you that in arriving at your verdict with respect to the items of the plaintiff's claim above mentioned you should take into consideration all parts of the contract bearing upon the same, including the 'addenda to proposal' embodied in the contract; and you are further instructed that if and to the extent, if at all, you find any irreconcilable conflict between the printed part of the contract and the typewritten addenda to proposal, you should adopt and accept such typewritten addenda in preference to the printed part of the contract in arriving at your conclusion as to what was meant by the words 'actual sheeted areas' in such addenda."

The jury were instructed at the request of the defendant that in order that the plaintiff may recover, he must prove by a preponderance of the evidence that the plaintiff performed the work pursuant to the agreement, and that the jury are to determine from the contract the rights and obligations of the plaintiff and the defendant, and unless the work was done pursuant to the written contract, the plaintiff could not recover.

We are all familiar with the general rule that questions of construction of written instruments are for the court, and are of law and not of fact. The instruction given by the court for the defendant left it to the jury to determine the rights and obligations of the plaintiff and the defendant, and they are to be deter-

mined from the written contract, and the jury are to construe the contract as to whether the work was done according to the jury's construction of the contract between the parties, so that when we come to determine whether the instruction offered and given by the court for the plaintiff is reversible error, it is necessary to consider the instructions given at the request of the defendant, and if faulty, the defendant cannot complain of a like error in the instructions given for the plaintiff. *Chicago & A. R. Co. v. Harrington,* 192 Ill. 9; *Cicero & P. Street Ry. Co. v. Meixner,* 160 Ill. 320; *Judy v. Sterrett,* 153 Ill. 94.

It seems that the defendant complains that the words in quotation marks are not proper because such marks tend to emphasize. With this contention we agree, and the court should not have given the instruction in this form. Still we do not believe that in the form as given —in view of the other instructions given at the request of the defendant—it is reversible error.

There is also complaint by the defendant as to the instruction wherein the court directed the jury that where there is any irreconcilable conflict between the printed part and the typewritten part, the jury are to adopt and accept such typewritten addenda in preference to the printed part of the contract. The general rule is clearly stated in 13 Corpus Juris, page 536:

"Writing and Printing. Where, as in the use of printed forms, a contract is partly printed and partly written, and there is a conflict between the printing and the writing, the writing will prevail. Handwriting will under the same rule prevail over typewriting, and typewriting over printing. But where the antagonism is merely apparent, the difference should be reconciled, if possible, by any reasonable interpretation. The rule that effect must be given, if possible, to all terms of a contract applies to instruments partly written and partly printed as well as to those wholly written or wholly printed."

The Supreme Court of this State in the case of *City of Chicago v. Weir,* 165 Ill. 582, upon this question, said: "It seems that the contract was drawn on a printed form used by the city, with blanks to be filled in by writing. The clause referred to from the specifications is a part of the printed form, while that part of the contract heretofore set out providing for payment for rock excavation is written in the contract with pen and ink. The law is well settled that where a printed form is used, to be filled up by writing, the written part will control in the construction of the contract. *(American Express Co. v. Pinckney,* 29 Ill. 392.)* In so far, therefore, as the clause in the specifications may conflict with that part of the contract in regard to rock excavation, the latter, having been written in the contract, must control."

We quite agree that the instruction offered by the plaintiff and given by the court upon the question of interest, in these words:

"The court instructs the jury that this suit being upon a written contract, the plaintiff is entitled to interest at the rate of five per cent on the amount, if any, you find to be due the plaintiff from the time the same became due," was not justified from the facts in this case, but when we examine the verdict we find that the jury returned a verdict for $42,030.12. This is the total amount of the two items of $7,199.61 and $34,830.51, involved in this litigation, and it would be a reasonable assumption, from these figures, that the jury did not allow interest upon these amounts, and we are satisfied from this record that the defendant was not prejudiced and that the judgment should not be reversed upon this ground.

There is objection to certain evidence offered on behalf of the plaintiff to the effect that by the use of air in doing the work, it would cost a million dollars, but upon examination it would seem that the witness,

in so testifying upon this question, was relating a conversation with Mr. Young, the engineer in control of the work for the defendant, and we are of the opinion that the evidence was not of such character that the defendant was prejudiced by the evidence of this witness.

By the admission of the defendant that the $1,000 deposited was due the plaintiff, it is apparent that this amount was not included in the verdict of the jury, and that said sum should have been included. However, for a failure to include this amount it will not be necessary to reverse the judgment, for by the provision of sec. 111, ch. 110, Cahill's Ill. Rev. Stat. 1929, the judgment may be partially reversed and such judgment rendered here as the trial court should have rendered. *Minnesota Mut. Life Ins. Co. v. Welsh,* 131 Ill. App. 103.

The plaintiff filed cross errors to include other items in the judgment that were not considered by the jury when it returned the verdict. The cross errors filed by the plaintiff have been considered by this court, but we are of the opinion that the item of $1,840 for work done in driving through a sunken boat, and the item of $897.28 for extra work in the removal of a submerged dock, were questions for the jury to pass upon, and the items not having been included in the verdict, we will not further consider these cross errors.

The plaintiff indicated by cross error that it regarded the amount of the judgment as being erroneously entered, and in part we have agreed with this contention, and upon this suggestion entered judgment in this court for the amount stated in the opinion. It follows, this being the judgment entered, interest will be computed from the date of the judgment entered in this court.

For the reasons stated in this opinion, the judgment will be affirmed in part as to the sum of $42,030.12, and

amended so as to include the $1,000 admitted by the defendant to be due the plaintiff, and therefore judgment will be rendered here for the sum of $43,030.12.

*Affirmed in part and amended in part and judgment here.*

Wilson and Hall, JJ., concur.