(Nos. 1833-1834, Consolidated—

GEORGE C. PETERSON Co., No. 1833, GEORGE C. PETERSON Co., No. 1834, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 14, 1939.*

BUSSIAN & DEBOLT, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

674

Mr. Justice Yantis delivered the opinion of the court:

The claimant in each of the above entitled cases is the same, the George C. Peterson Company being a corporation licensed under the laws of the State of Delaware with its principal offices in the City of Chicago. It is principally engaged in the business of buying, selling and dealing in petroleum products, wholesale and retail.

The declarations in both cases were filed at the same time, i. e. on November 19, 1931. In the former case, No. 1833, claimant alleges that on the 15th day of August, 1929 it entered into a contract with the State of Illinois whereby it obligated itself to sell and deliver 350,000 gallons of gasoline at 11.9c per gallon to the State of Illinois, to be shipped to the Division of Waterways, Dresden Island Lock and Dam, near Divine, Illinois, and that the respondent by said contract obligated itself to purchase and receive said gasoline at the price above stated; that pursuant to said contract the State accepted delivery of 28,226 gallons of such gasoline, but in

disregard of inquiries by claimant for further shipping orders covering the shipment of the balance of said gasoline which it was then and there ready and willing to deliver, the State thereafter failed to accept any part of such remainder. That due to the refusal of respondent to accept the balance of the gasoline under the terms of said contract, claimant had been damaged in the sum of Fifteen Thousand ($15,000.00) Dollars.

In the second complaint, i. e. No. 1834, claimant alleges that on the 7th day of May, 1929 it entered into a contract with the State of Illinois whereby the claimant contracted and obligated itself to sell and deliver gasoline, kerosene and other petroleum products to the State of Illinois to be shipped to the Division of Waterways Brandon Road Lock & Dam near Joliet, Illinois, and the State of Illinois by said contract obligated itself to purchase and receive the same in the quantity, quality and the price therein alleged. That after a small portion of the merchandise contracted for had been delivered, as set forth in the complaint, the respondent declined to accept the remainder of said petroleum products and that the plaintiff, by reason of such refusal of respondent to perform the terms of its agreement, has sustained damages in the sum of Five Thousand ($5,000.00) Dollars.

A motion to dismiss the complaint was filed by respondent in each case, and on September 11, 1934 an order was entered that such motion would be taken with the case. Thereafter evidence was taken and certain stipulations entered into between the parties, the last of such stipulations being filed October 24, 1938. Final Statement, Brief and Argument was filed by claimant November 14, 1938 in each case.

Respondent contends that the officer who purported to enter into the contracts on behalf of respondent had no authority to bind the latter; that respondent in and by such contracts did not agree to accept the amount of gasoline and petroleum products set forth in such contracts; that there was no appropriation at the time of the making of such contracts out of which payment could be made for the items contracted for; that the Court of Claims has no jurisdiction to determine the present claims upon their merits because of another forum to which such matter should have been submitted, and further that if an award was entered by the court the legislature could not make a valid appropriation in pay-

ment thereof. In addition to the foregoing, counsel for respondent disagree with counsel for claimant as to the proper measure of damages for any loss suffered by claimant herein.

Photostatic copies of the specifications upon which the contracts in question rested, appear as part of the evidence, and by stipulation filed October 24, 1938, the parties herein agree that such photostatic copies are true copies of the original proposals submitted by the claimant, in answer to a notification from the respondent through its Division of Purchases and Supplies of the Department of Purchases and Construction that such respondent would receive sealed proposals for furnishing and delivering to the Division of Waterways, F. O. B. Dresden Island Lock & Dam site at Divine, Illinois, certain gasoline under the one contract and certain gasoline, grease and other oil products described in the second specifications; that attached to the original proposals were copies of the articles, quantities and quality thereof taken from the respective notifications, together with the price per unit at which the articles specified in such notifications would be furnished by claimant; that the original notifications were received by claimant from respondent, and that there was written on such notifications the price per unit at which said articles therein specified would be furnished by claimant at the location designated, and that the price therein stated was inserted as a bid price by authority and consent of the claimant; that O. L. Peterson was duly authorized by the claimant corporation to make the proposals in question. The stipulation further states that the items specified in such proposal were to be charged to the appropriation for the Illinois Waterway Fund Construction and were to be delivered by truck or wagon to the State of Illinois Division of Waterways Dresden Island Lock & Dam, Divine, Illinois. That the purchase order was delivered by the Division of Purchases and Supplies of said Department of Purchases and Construction to and was accepted by the claimant in response to said proposal.

The proposal by claimant company in each instance consists of a brief statement printed at the bottom of the State's specifications, to the effect that the bidder proposed to furnish, in accordance with the terms of the specifications, the

articles therein set forth, opposite to which the bidder had indicated a price. Such proposal contains the following statement:

"It is agreed that deliveries are to be made to the institutions in accordance with conditions on sheet No. 2."

This proposal is directed to the "Division of Purchases and Supplies of the Department of Purchases and Construction." The proposal and the specifications to which it refers is a printed form which is used in the general purchase of supplies for the various institutions of the State, and "Sheet No. 2" thereof contains a list of thirty-one State institutions with railroad delivery facilities indicated after the name of each. The specifications contained two additional typewritten sheets, the one in case No. 1833 containing the following paragraph, to-wit:

"Sealed proposals will be received in the office of the Division of Purchases and Supplies, Capitol Building, Springfield, Illinois, until 2 o'clock P. M., Tuesday, August 6, 1929, on 350,000 gallons of grade No. 1 gasoline. Necessary blanks and full information furnished upon application to the Division of Purchases and Supplies. The right is reserved to reject any and all bids."

Beneath this paragraph claimant had noted a bid price for "350,000 gallons of grade No. 1 gasoline at a unit price of 11.9c per gallon." Thereafter follows certain specifications as to color, corrosion, distillation range, acidity and sulphur. A further clause provides as follows:

"Bidder to furnish and install free of all extra cost to State, tank storage of 1000 gallons or more with pump or pumps for distribution. Deliveries to be made by tank wagon (or auto truck) in quantities as required, within four hours of telephone order from superintendent on the job. Estimated requirements from 1000 to 1500 gallons per day, to be delivered to State of Illinois Division of Waterways Dresden Island Lock & Dam site, Divine, Illinois."

The foregoing is signed:

"Very truly yours
"Division of Purchases & Supplies
"A. W. Daily
"State Purchasing Agent."

Sheet No. 1 of the specifications contains:

"BIDS:

"All bids must be addressed to 'State Purchasing Agent,' State House, Springfield, Illinois.

"DELIVERIES:

"Deliveries are to be made upon order of the Managing Officers of the institutions or the State Purchasing Agent.

"PAYMENTS:

"Vouchers for approved bills will be issued—on orders duly issued by the Managing Officer or the State Purchasing Agent.

"SAMPLES:

"All samples must be addressed to 'State Purchasing Agent.'"

In transacting the demands of its business, the Department of Purchases and Construction must designate certain individuals to perform certain duties. In the Division of Purchases and Supplies the State Purchasing Agent has been indicated, as shown in the specifications issued by the department, as the one with whom parties contracting for the sale of supplies, should deal.

The motion to dismiss the claim, as filed herein by respondent, was based upon two reasons only, i. e. that the respondent, according to the complaint, was obligated only to take the products it might need, and that the complaint contained no allegation that it did not take same; and second, that the claimant did not allege in its complaint what the market price of the products were so that it could appear from the complaint whether or not any damage had accrued. The State did not file an answer or plea to claimant's complaint, but filed its motion to dismiss as above stated. The court is considering this motion with the case, but the case stands, under the rules, as though the State had filed a plea of general issue. The Attorney General contends that Daily, the State Purchasing Agent, had no authority to bind the State by signing the contract in question; that only the Director of the Department could bind the State in such manner.

Claimant contends that as the execution of the contracts in question and their validity was not denied by a verified plea, it is not necessary to prove the authority of the agent who signed on behalf of the State. Counsel for claimant contend that the respondent should not be permitted to deny, on the trial, the execution and legality of the contract in question and cites in behalf of his contention the following, i. e. *Schuyler County* vs. *Missouri Bridge & Iron Co.*, 256 Ill. 348; *City of Chicago* vs. *Peck*, 196 Ill. 260; and *Melluish* vs. *City of Alton*, 230 Ill. App. 250.

Regardless of the question of pleading, we believe the record herein discloses that A. W. Daily, as State Purchasing Agent, had authority to act for the State in the manner herein disclosed, and that the contract between claimant and the State was validly entered into and was binding upon respondent.

The specifications contain a further provision as follows:

"QUANTITIES:

"The Managing Officers will order within 10 per cent, more or less, of the quantities shown in the purchase order. The contractor will not be called upon to deliver a greater excess than 10 per cent and the State shall not be called upon to accept more than the actual needs of the institution.

"DURATION OF CONTRACT:

"All articles furnished under contract are for three months' supply, unless otherwise specified, and it is mutually understood and agreed that the said contract automatically expires on the last day of the current quarter."

The invitation for proposals or bids do not contain any term limit or specified time within which the supplies in question were to be furnished other than that just quoted under "DURATION OF CONTRACT," being the typewritten paragraph on sheet No. 2, to-wit:

"Delivery to be made by tank wagon or auto truck in quantities as required within four hours of telephoned order from superintendent on the job. Estimated requirements from 1000 to 1500 gallons per day."

From the evidence herein in case No. 1833 we find that claimant company and respondent entered into a contract as of August 15, 1929, whereby the claimant agreed to sell and deliver in accordance with the terms of said contract, to the State of Illinois, 350,000 gallons of gasoline at 11.9c per gallon to be shipped to the Division of Waterways Dresden Island Lock & Dam site at Divine, Illinois in accordance with estimated requirements of from 1000 to 1500 gallons per day; delivery to be made in quantities as required upon telephone orders from the superintendent on the job. We are of the opinion that the proviso in said contract that it was subject to a duration of three months, and that such contract was to automatically expire on the last day of the current quarter covered by said contract, is limited or restricted by the typewritten statement that was written into such contract whereby the total amount of gas to be received under the contract,

was estimated at 1000 to 1500 gallons per day. To use this amount of gas, even at the daily delivery of the maximum of 1500 gallons, would require two hundred ten (210) days, after allowing for a reduction of ten (10) per cent, under the terms of the specifications.

This in itself evidences that the typewritten statement in the specifications is to be taken as a modification of the printed matter found under the heading of "DURATION," and that the latter is to be considered in connection therewith.

Where the provisions of a contract which are partly printed and partly typewritten and the printed and typewritten provisions are fairly in conflict, the typewritten provision must control.

To this effect is *Warner Const. Co.* vs. *Lincoln Park Com'rs.*, 278 Ill. App. 42-52. In this case the defendant contended that where there is an apparent conflict between the printed part and the typewritten part of a contract, the typewritten part must control. The court sustained the contention citing 13 CORPUS JURIS, at page 536, where it is said:

"Writing and Printing. Where, as in the use of printed forms, a contract is partly printed and partly written, and there is a conflict between the printing and the writing, the writing will prevail. Handwriting will under the same rule prevail over typewriting, and typewriting over printing."

It further appears from the evidence that the State, pursuant to said contract, accepted delivery of 28,226 gallons of gasoline under said contract and paid claimant therefor. Oscar L. Peterson testified, as Vice-president of claimant company, that the last delivery of gasoline under this contract was made about January 12, 1930; that the official in charge of the job notified his company verbally at that time to make no further deliveries; that the price of gasoline on that date was 8.535c per gallon at Joliet, Illinois, which was the nearest point of delivery to Dresden Island Lock & Dam site; that the transportation cost from Joliet to Dresden Island would probably be one-quarter (¼c) cent per gallon. Witness Peterson further testified that so far as he knew respondent did not obtain any gasoline from anyone else up until the 12th of January, 1930, and that prior to that time the contract was not violated in any way. Mr. Peterson testified that subsequent to that date he saw a truck of the Hamlin Oil Company emptying the contents of tank wagons into the storage tanks at Dresden Island and that he believed it to be

gasoline. That these tanks have a capacity of about 45,000 gallons, and that he received information from the president of that company that during the seven months subsequent to January 12, 1930, the Hamlin Oil Company delivered approximately 250,000 gallons of gasoline to the Dresden Island job.

Claimant contends in case No. 1833 that it was ready, able and willing to furnish the full amount of gasoline quoted in its bid, and seeks payment of his lost profit on 321,774 gallons, being the difference between the amount accepted by the State prior to January 12, 1930, and the total of 350,000 gallons stated in its bid, or $11,326.44; this being, as he contends, the difference between the contract price of 11.9c per gallon and the market price of 8.535c per gallon at Joliet, Illinois on January 12, 1930.

We believe that the contract was for a definite amount and enforceable by both parties; that even if it was a requirement contract, the State did not take its full requirement from claimant, but after ceasing to call for supplies from claimant, obtained gas elsewhere; that the total of 350,000 gallons was subject to a reduction of ten (10) per cent under the specific terms of the contract, and that the quantity of gas for which claimant has the right to demand payment is 286,774 gallons.

We further believe that the proper measure of damages is the loss of profit suffered by claimant in connection with such non-acceptance of supplies.

In the case of *Nestler* vs. *Pure Silk Hosiery Mills*, 242 Ill. App. 151, page 165, the court said—

"The general rule is that the plaintiff is entitled to recover the total benefit of the contract, less expenses; * * * that without evidence to the contrary, the amount which would have been made as a profit if the contract had been kept, is the measure of damages if the contract is broken."

The contract price between claimant and the State was 11.9c per gallon. To the cost price of 8.535c at Joliet should be added the transportation cost of one-fourth (¼c) cent per gallon, to which Mr. Peterson testified, making a total cost of 8.785c per gallon, and leaving a profit of 3.115c. Claimant's profit at this price on 286,774 gallons would have been $8,933.01.

The Act by which the Court of Claims is created (Laws 1917 p. 325) contains this provision in prescribing the court's powers and duties:

"6. The Court of Claims shall have power

"(4) to hear and determine all claims and demands legal and equitable, liquidated and unliquidated, ex contractu and ex delicto, which the State as a sovereign commonwealth should, in equity and good conscience, discharge and pay."

Under sub-section 2 the court is further authorized to make rules governing its practice and procedure, which shall be as simple, expeditious and inexpensive as reasonably may be. But few States have seen fit to lay aside their sovereign immunity to financial demands made against the State. In construing the above Act, by which Illinois seeks to give to claimants a forum in which to present their demands, this court has endeavored to award payment upon all claims upon which the State would be liable if suable in a court of law, and which the State should, in equity and good conscience, discharge and pay. The position of the court in this regard is fully set forth in the case of *Crabtree* vs. *State*, 7 C. C. R. 207.

In the instant case the evidence discloses that there was a valid contract upon the part of claimant and respondent for the purchase of the gasoline in question, and that the parties to such contract acted in pursuance thereof, and that the claimant delivered and the State received a portion of the amount of gasoline which the claimant had obligated itself to furnish.

In support of his contention that this claim is one arising under the terms of the Illinois Waterway Act and that therefore the Court of Claims has no jurisdiction, the Assistant Attorney General cites the case of *Hanna, et al* vs. *State*, 8 C. C. R. 352. That case was one for alleged damages to property by obstruction of the flow of water in the course of construction of the Illinois Waterway. *Section 24* of said Act *(Canals and Rivers, Ch. 19, Par. 114, page 214, Cahill's Ill. Rev. Statutes, 1931)* provides—

"All claims for damages to persons (except to employees) and all claims for damages to property, real or personal, shall be ascertained, determined and fixed by the Department of Public Works and Buildings, and paid out of any moneys which shall from time to time be provided for the payment of such claims * * *.

"All claims for damages to persons or property shall be filed with the Department of Public Works and Buildings within five years after the injury complained of."

The instant claims (No. 1833 and No. 1834) are not for damages to person or to property, but are contractual de-

mands arising out of the alleged breach of its contracts by the State. The limitation as to jurisdiction, contended for, does not apply and we find that the Court of Claims may properly consider the claims now before us.

From what funds may the damages herein, if any, he paid?

*Article 14, Separate Section 3* of the *Constitution of Illinois* of *1870 (Ill. Rev. Statutes of 1927*, p. *26)* provides as follows:

"The General Assembly shall never loan the credit of the State or make appropriations from the treasury thereof, in aid of railroads or canals;

"*Provided*, that any surplus earnings of any canal, waterway or water-power may be appropriated or pledged for its enlargement, maintenance or extension; and

"*Provided*, that the General Assembly may * * * provide, for the construction of a deep waterway * * * and authorize the issue of bonds in a total amount not to exceed twenty million dollars * * *."

It appears from the foregoing that claimant's damages can therefore be compensated only out of the moneys in the Deep Waterway Fund. Claimant apparently recognized this for in the stipulation filed by the parties on October 24, 1938 they agreed that the items specified in the proposal for contract made by claimant, were to be charged to the appropriation for the Illinois Waterway Fund Construction.

The court is not informed as to what money may be available with which to pay the award herein entered, but we find that claimant is entitled to an award in case No. 1833 in the sum of $8,933.01.

The contract at issue under the case of *George C. Peterson Co.* vs. *State of Illinois*, C. of C. No. 1834 was, according to the evidence, entered into on May 7, 1929. The proposal and specifications precedent to same are similar to those involved in case No. 1833 except for the dates therein and the typewritten description of merchandise covered by said proposal. Said proposal and specifications contain the following typewritten matter:

"Sealed proposals will be received by the Division of Purchases and Supplies of the Department of Purchases and Construction * * * until 2 o'clock P. M. Thursday, April 18, 1929 for furnishing and delivering to the Division of Highways 285,000 gallons of gasoline and 12,000 gallons of oil, for furnishing and delivering to the Division of Waterways F.O.B. Brandon Road Lock & Dam, Joliet, Illinois wagon or truck delivery, 7,850 gallons motor oil, 8,200 pounds grease, 600 gallons kerosene and 225,000 gallons gasoline. Full information and necessary blanks furnished upon application to the Division of Purchases and Supplies."

Thereafter follows a request for a quotation by bidders of a price for furnishing the Division of Waterways F. O. B. Brandon Road Lock & Dam, Joliet, Illinois for delivery by truck or wagon of the above quantities of motor oil, grease, kerosene and gasoline to be delivered to the Division of Waterways Brandon Road Lock & Dam, Joliet, Illinois. Claimant company signed the proposal form attached to said specifications and inserted after the various items the price per gallon or pound at which it agreed to furnish the articles in question for the Brandon Road Lock & Dam delivery. No proposal was made for sale of the 285,000 gallons of gas or the 12,000 gallons of oil to the Highway Department.

These specifications contain the same printed section found in the specifications in case No. 1833, as to ''Duration of Contract,'' i. e.:

"Duration of Contract—All articles furnished under contract are for three (3) months' supply, unless otherwise specified, and it is mutually understood and agreed that the said contract automatically expires on the last day of the current quarter."

These specifications do not however contain the type-written provision that appears in the other specifications whereby the required needs of the purchaser were stated at 1000 to 1500 gallons of gasoline per day. Neither is there any other statement written or printed into the document that can be construed as an exception or limitation of the Duration of Contract Clause or as a fulfillment of the words therein, ''unless otherwise specified.''

According to the testimony of Mr. Peterson, President of claimant company, the last shipment of gasoline and other petroleum products under the contract of May 7, 1929 (being case No. 1834) was July 31, 1929. Prior to that time the State had accepted 56,701 gallons of gasoline on the Brandon Road job, and had also accepted delivery of certain portions of grease and motor oil, under such contract. Mr. Peterson testified that claimant company furnished all the gas and oil that was used on the Brandon Road Lock & Dam job required as the work progressed up to July 31, 1929, and that after that date no such supplies were furnished by claimant and the respondent obtained its gas and oil from other sources thereafter. The only testimony appearing in the record of such delivery by other parties is that Mr. Peterson who testified that *some time in August, 1929* he saw a tank wagon of the

Texico Company deliver the supplies to the gasoline tanks on this job.

It appears from the record that no breach of the contract was committed by the State during the three months following the date of the contract, i. e. May 7, 1929.

The court finds that the duration of such contract was, by its terms, limited to a period of three months from the date thereof, and that said contract automatically expired at the end of such time, i. e. on August 7, 1929. Further, that the State was within its rights, under the specific wording of such contract to consider same cancelled at the end of such three months and to thereafter purchase its supplies independently thereof. As claimant was paid in full for all supplies furnished by it under the terms of such contract, there is no legal basis upon which an award can be made by the court in case No. 1834 and an award therein is hereby denied, and the claim dismissed.

An award is hereby made in favor of claimant in the case, of *George C. Peterson Co.* vs. *State of Illinois,* Court of Claims No. 1833 in the sum of $8,933.01, payable out of the Waterway funds as hereinabove noted.