CHICAGO—FIRST DISTRICT—OCTOBER, 1926.    151

Nestler et al. v. Pure Silk Hosiery Mills, 242 Ill. App. 151.

***

**E. Max Nestler et al., Trading as Shawnee Textile Company, Appellees, v. Pure Silk Hosiery Mills, Appellant.**

**Gen. No. 30,592.**

1. SALES—*sufficiency of evidence to show making of binding agreement for the sale of merchandise.* Evidence in an action for damages for breach of an alleged contract of sale of merchandise held sufficient to establish the making of a binding contract as alleged by plaintiffs.

2. SALES—*misrepresentations by vendor as affecting right of vendee to avoid contract of sale.* The fact that the vendor of merchandise to be manufactured for the vendee fraudulently represented that he was the manufacturer of such merchandise, when in fact he was merely a jobber, will not render the contract void, but makes it merely voidable.

3. SALES—*when vendee not relieved of liability under contract of sale by misrepresentation of vendor.* The vendee of merchandise to be manufactured will not be relieved of liability under the contract upon the ground that the vendor fraudulently represented that he was the manufacturer of such merchandise when he was merely a jobber, where such vendee did not seek to cancel the contract at the time it learned of such misrepresentation, but some months later and then upon a different ground, and did not then or thereafter, until the trial, claim that it had been misled

152 APPELLATE COURTS OF ILLINOIS.

Nestler et al. v. Pure Silk Hosiery Mills, 242 Ill. App. 151.

or damaged because of such representations, nor at any time produce evidence in support of such claim.

4. SAVING QUESTIONS FOR REVIEW—*sufficiency of objections to oral instructions in municipal court.* Objections to instructions given orally in municipal court, in an action for breach of a contract of sale, held not sufficiently specific to warrant review, in view of Rule 8 of that court.

5. SALES—*burden of proof as to duty and possibility of mitigating damages of vendor in action for breach of contract by vendee.* In an action for breach of a contract of sale of merchandise the burden is upon the defendant to show that the plaintiff could and should have taken steps to mitigate his damages.

6. DAMAGES—*measure of vendor's damages for breach of contract of sale of merchandise by vendee.* In the absence of proof that the plaintiff in an action for breach of a contract for the sale of merchandise could or should have mitigated his damages, the measure of his recovery is the contract price less the cost of performance.

Appeal by defendant from the Municipal Court of Chicago; the Hon. GEORGE A. CURRAN, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1925. Affirmed. Opinion filed October 13, 1926.

MCINERNEY & POWER, for appellant.

HELMER, MOULTON, WHITMAN & HOLTON, for appellees.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

On November 21, 1922, three brothers, E. Max Nestler, R. J. Nestler and Ernest E. Nestler, copartners, doing business as the Shawnee Textile Company, brought suit in the municipal court for damages in the sum of $3,000, which it was alleged had been caused by the defendant failing to carry out a contract by which it had agreed to purchase from the plaintiffs 1,500 dozen pairs of ladies' silk and wool hosiery. There was a trial before the court, with a jury, and a verdict and judgment in favor of the plaintiffs in the sum of $3,000. This appeal is therefrom.

The statement of claim alleged that on February 6, 1922, the plaintiffs entered into a contract with the defendant whereby they agreed to sell, and the defendant agreed to buy, "twenty-five (25) cases of ladies silk and wool hosiery, a total of fifteen hundred (1500) dozen pairs, style No. 1480, at the agreed price of $13.00 per dozen pairs"; that on the same date, the defendant mailed a letter to the plaintiffs confirming its order, which contained the following:

"We take this opportunity in advising you that we hereby confirm order for 25 cases of the silk and wool same as samples your Mr. Nestler left here at $13.00 per dozen without kloxing, first case to be shipped September 1st. We have seen several other lines of beautiful silk and wool, but all things being considered we propose to deal with your firm.

"You may rest assured that we believe we will use more than the 25 cases we are specifying. We will push this line hard and hope to take a great many more cases before the season is over, so we would like to have an option on 25 additional cases at the same price.

"As we wrote you last week our Mr. Williams expects to call upon you some time during the week of February 13th to 18th";

That on February 8, in confirmation of the defendant's letter of February 6, the plaintiffs wrote to the defendant as follows:

"We acknowledge receipt of your letter of February 6th, and we hereby confirm sale to you of twenty-five cases, total 1,500 dozen of ladies silk and wool hose, style No. 1480, at the price of $13.00 per dozen, without kloxing, subject to confirmation of details as to packing, colors, etc., in the near future. Also that first cases be shipped September 1st.

"We have also covered you for an option on twenty-five additional cases at the same price, these details to be furnished as may be later decided.

154   APPELLATE COURTS OF ILLINOIS.

Nestler et al. v. Pure Silk Hosiery Mills, 242 Ill. App. 151.

"We shall be very pleased to see Mr. Williams, and at this time we will take these various matters which we trust will be entirely satisfactory";

That on February 15, at Mifflintown, Pennsylvania, the defendant approved and accepted the terms of the confirmation as set forth in plaintiffs' letter of February 8, 1922, and promised to furnish the plaintiffs with instructions as to colors, packing, etc., as its orders might require; that the plaintiffs contracted for the manufacture and completion of the merchandise specified in said order, at the price of $11 per dozen pairs, and was at all times able, willing and ready to comply with the contract;

That on June 16, 1922, without fault on the part of the plaintiffs, the defendant failed and refused to furnish the plaintiffs with instructions as to the colors required, although requested to do so, and breached its contract; that on the last date mentioned, the defendant advised the plaintiffs that it had canceled the contract, and on July 25, 1922, wrote to the plaintiffs that the order was canceled; that the plaintiffs have been damaged in the sum of $3,000, being the equivalent of the margin of profit of $2 per dozen pairs on 1,500 dozen.

On March 12, 1923, the defendant filed an affidavit of merits, alleging that it had a good defense to the merits of the whole of the plaintiffs' demand, and that its defense to said suit is as follows:

"That on or about the 6th day of February, A. D. 1922, a representative of the plaintiff called on the defendant, submitted and left with the defendant, samples of hosiery and requested the defendant to purchase hosiery as per sample; that said hosiery was manufactured and made by the plaintiff; that the representative of said defendant then and there stated that said defendant would take twenty-five (25) cases of the silk and wool, same as samples, at thirteen ($13)

dollars per dozen, without kloxing, the first case to be shipped September 1st'';

That on February 6, 1922, the defendant wrote the plaintiffs the letter of that date which is set up in the plaintiffs' statement of claim, and received in return the letter dated February 8, 1922, which is the letter of that date set up in the plaintiffs' statement of claim.

In the affidavit of merits, the defendant denies that the letter of February 8, 1922, from the plaintiffs to the defendant, is a confirmation of the sale to the defendant of the said merchandise; denies that on February 15, at Mifflintown, the defendant approved and accepted the terms of said confirmation, as set forth in plaintiffs' letter of February 8, 1922; denies that it promised to furnish the plaintiffs with instructions as to colors, packing, etc., as its orders might require; denies that thereupon the plaintiffs contracted with the manufacturers for the manufacture and completion of the merchandise specified in said order, at the price of $11 per dozen pairs; denies that the plaintiffs were at all times able and willing to comply with the said alleged contract according to its terms; denies that on June 16, 1922, without fault on the part of the plaintiffs, it breached its contract in that it failed and refused to furnish plaintiffs with instructions as to colors required, and denies that the plaintiffs have been damaged to the extent of $3,000, or any sum whatsoever.

The plaintiffs, Richard J. Nestler, E. Max Nestler, and Ernest E. Nestler, brothers, constituted a copartnership entitled, the Shawnee Textile Company, and conducted a hosiery brokerage business. Their offices, which were in Mifflintown, Pennsylvania, were in the same building as a hosiery manufacturing concern known as the Juanita Hosiery Mills, which was owned by their father.

The defendant, Pure Silk Hosiery Mills, is a corporation, having its principal place of business in Chicago. At the trial, the depositions of the three plaintiffs were read in evidence, and, for the defendant, one Ennis, president, and Williams, treasurer, testified. Certain letters, the principal of which are those set forth in the statement of claim, were offered in evidence.

On, or shortly before February 6, 1922, as it is stated in the affidavit of merits, of the defendant, "a representative of the plaintiffs called on the defendant, submitted and left with the defendant, samples of hosiery and requested the defendant to purchase hosiery as per sample." The affidavit of merits then states, "that said hosiery was manufactured and made by the plaintiffs," but it does not state that that representation was made by the plaintiffs. The affidavit of merits further states, "that the representative of said defendant then and there stated that said defendant would take twenty-five (25) cases of the silk and wool, same as sample, at thirteen ($13) dollars per dozen, without kloxing, the first case to be shipped on September 1st."

The letter of February 6, 1922, which is set forth, as stated above, in the statement of claim, and in the affidavit of merits, contains the following:

"We take this opportunity in advising you that we hereby confirm order for 25 cases of the silk and wool same as samples your Mr. Nestler left here at $13.00 per dozen, without kloxing, first case to be shipped September 1st. We have seen several other lines of beautiful silk and wool, but all things being considered, we propose to deal with your firm."

It is contended on behalf of the defendant that no contract of sale between the parties was ever completed. With that, we cannot agree. We think it is obvious that the statements set forth above and which are contained in the affidavit of merits taken together

with those in the letter of February 6, recite the existence of such facts as in the eyes of the law make out a binding agreement; and, further, that the evidence introduced at the trial establishes the truth of the statements contained in the affidavit of merits and the letter.   The affidavit of merits admits, and the evidence proves, that on February 6, a representative of the plaintiffs submitted to the defendant certain samples of hosiery, and requested the defendant to purchase hosiery ''as per sample,'' and that on the same day the defendant wrote to the plaintiffs advising them not only that it confirmed the order ''for 25 cases of the silk and wool, same as samples your Mr. Nestler left here at $13.00 per dozen, without kloxing,'' but requested that the ''first case be shipped by the plaintiff to the defendant on September 1st.''   Certainly the admissions referred to in the affidavit of merits and the letter of February 6 prove that there was a meeting of minds and a contract made, which was complete and binding upon both parties.   The defendant's acceptance of the plaintiffs' offer was positive and unambiguous.    Williston on Contracts, sec. 72, vol. 1. The question remains whether anything was done thereafter which modified or qualified that contract in such a way as to justify the defendant in refusing to comply with its terms.

A number of other letters which passed between the parties were offered in evidence.   One, dated February 8, acknowledged the receipt by the plaintiffs of defendant's letter of February 6, and recites:   ''We hereby confirm sale to you of twenty-five cases, total 1,500 dozen of ladies silk and wool hose, style No. 1480, at the price of $13 per dozen, without kloxing, subject to confirmation of details as to packing, colors, etc. in the near future; also, that the first cases be shipped September 1st.''   Some argument is made that the use of the phrase, ''subject to confirmation of details as to packing, colors, etc.'' related back and qualified

what had gone before. In our judgment, however, that was merely a matter of detail, and did not affect the fact that there was already a binding contract on the subject between the parties.

On April 29, 1922, the defendant wrote to the plaintiffs that it wanted the first case of samples early in September, and desired to know about the ability of the plaintiffs to deliver them. That letter, which is too long to quote in full, was evidently written on the assumption that the contract in question was outstanding and binding.

On May 5, 1922, the plaintiffs wrote to the defendant in answer to the foregoing letter of April 29: "We presume that your deliveries will run from September on and at this time should find us in very good position on account of the fact that the bulk of the jobbers have their deliveries taken in by August, and September deliveries are slight generally speaking, with the exception of the eastern jobbers."

On June 16, 1922, the defendant wrote a letter to the plaintiffs, which contained the following:

"Very contrary to our personal wishes in the matter, conditions exist which compel us to cancel the order given you, for ladies Silk and Wool hosiery, consisting of twenty-five cases.

"We are getting so many complaints about the prices, the public continually demanding merchandise at a less price, that we have come to the conclusion that we would have a very difficult time in disposing of this number at the price we would be compelled to ask for it."

At the close of the letter appears the following: "So we feel that it is a difficult task to try to market the Silk and Wool number, at the price we would be compelled to get for it, and we assure you, it is much to our dislike, personally, that we are compelled to cancel this order."

On June 26, 1922, the plaintiffs wrote to the defendant that, having received the defendant's letter of June 24 inclosing copy of the letter which the defendant had written on the 16th, he was very much surprised at the action which the defendant had taken. Plaintiffs' letter of June 26 contained the following: "Following through the correspondence you will note that the order has been confirmed by you and acknowledged by us and that all arrangements have been made for the delivery and fulfillment of this order in good faith.

"The order was placed with us Feb. 6th, acknowledged on Feb. 8th at which time we also held open an option of an additional 25 cases at the same price. As late as April 29th you advise us that you must have the positive assurance that the merchandise can be turned out on delivery dates specified and that you also intimate that you will be able to use possibly triple the quantity ordered. This latter correspondence, of course, has no direct bearing on the order placed Feb. 6th.    *    *    *

"The season now is past for our trade to buy fall commitments and we are, therefore, unable to accept your cancellation."

On July 5, 1922, the plaintiffs wrote to the defendant:

"We note your paragraph in which you advise that we should welcome cancellation owing to the fact that the price of the commodities entering into the manufacture of the silk and wool line is higher at this time than at the time your order was placed.    *    *    * The order was taken and confirmed by us and our production has been so outlined to take care of this business.

"We wish to call attention to the fact that it is poor business policy on the part of yourselves to place orders in good faith and expect the mills to cancel them at your will.   We accommodated you last year with

the cancellation of an enormous amount of goods which we had in stock or else had material contracts covered to manufacture the goods and which cancellations, we accepted owing to the fact that you had given us an order on the wool goods which profit would help this loss out to some extent.''

On July 7, 1922, the defendant wrote to the plaintiffs:

''As far as your ability to sell this quantity is concerned, I would think it would be a simple matter. You could write any of your customers and tell them that owing to a cancellation, you can give them an extremely low price, 'which you quoted us,' and they doubtless will be glad to get it.''

On July 7, the plaintiffs wrote to the defendant, acknowledging receipt of the defendant's letter of July 7, and said:

''The key to your whole letter, as we see it, is the fact that you want this order canceled and for reason other than the complaint as to the quality of the goods, as in your sixth paragraph, you offer the proposition that you take in the silk and wools providing that the silk goods would be returned. This is a commitment that the silk and wool goods can be used or else you would not make this proposition. * * *

''As mentioned in our previous correspondence order has been accepted in good faith and arrangements have been made for the fulfillment and delivery of the same and we shall look to you to take in this order.''

On July 20, 1922, the defendant wrote to the plaintiffs, as it had not heard from the plaintiffs in reply to its, the defendant's, letter of July 7, as follows:

''Not hearing from you, in reply to our letter of July 7th, in which we made you a proposition that we would return to you the Silk Hosiery purchased from you, in the same value requirements as the Silk and Wool which you wish to ship us, we take it for granted

that this proposition is not satisfactory and that the order for Silk and Wool stands cancelled, and the incident closed.''

On July 25, 1922, the defendant wrote to the plaintiffs:

''We can only state that inasmuch as you have already failed to accept our proposition to return your silk hose, we can only reiterate our letter of July 20th, and consider the incident closed. We can only say that should you send us any hosiery, we shall not receive same from the Transportation Co.''

It will be seen from the foregoing that the defendant, by its letter of June 16, 1922, undertook to cancel its contract with the plaintiffs, and on the sole ground that the price which it had agreed to pay for the hosiery made it difficult for them to sell it at a profit. That letter, besides being an effort to cancel the contract, must be considered as evidence that the defendant recognized that there was a contract in existence at the time. It appears, considering that letter and all the letters that follow, that at no time did the defendant claim that a binding contract had not been made; whereas, on the other hand, practically all the letters confirm the fact that both parties recognized the interview, which it is admitted by both parties took place on February 6, together with the letter from the defendant to the plaintiffs on the same day, as resulting in a binding contract for the purchase and sale of the hosiery in question.

The situation was well expressed by the plaintiffs in their letter of June 26, in which they said: ''Following through the correspondence you will note that the order has been confirmed by you and acknowledged by us and that all arrangements have been made for the delivery and fulfillment of this order in good faith.'' It is our judgment that not only was a binding contract made on February 6, but the fact that in the letter of February 8, from the plaintiffs, the words

were used, "subject to confirmation of details as to packing, colors, etc., in the near future," was unimportant and did not affect in any way the binding qualities of the contract already made. *Horgan v. Russell*, 24 N. D. 490. Further, from the correspondence above set forth, it is clearly shown that both parties recognized the contract as having been made and as binding.

It is urged for the defendant that the evidence shows that there was no meeting of minds, because on February 8, Williams, the treasurer of the defendant, called on the plaintiffs at their office in Mifflintown, "to close certain details with reference to packing the order," and because the evidence shows that Williams selected four papers representing colors of papers to be used on the paper boxes, and took them with him, to call on certain printers and boxmakers; and, also, took four colors of hosiery representing the line which the defendant bought, and because Williams said he would let the plaintiffs have the details of the number of dozens of each color and the packing selected after he returned to Chicago and talked the matter over with Ennis, the president of the defendant; and that at no time were those matters agreed upon. But as we have intimated before, those matters arose subsequent to the meeting of minds on February 6; and, further, even if they had been part of the original negotiations, they were mere details and negligible when determining whether there was a contract of purchase and sale; (sec. 79, vol. I, Williston on Contracts) and then, still further, the subsequent correspondence demonstrates that both parties treated their negotiations as creating a contract, even without an understanding as to the details mentioned.

The defendant makes the further contention that the contract in question is void by reason of the fact that the plaintiffs fraudulently represented that they were manufacturers of the hosiery they were offering

for sale, and that the goods which were the subject of this contract were to be made up by them as such manufacturers; whereas, the fact is that the plaintiffs were not manufacturers, but jobbers. Even on the defendant's theory, the contract might be avoidable, but it would not be void. The defendant did not plead the alleged fraud or misrepresentation of which it now seeks to avail itself, so it was not properly in issue, but when the defendant presented evidence on the subject, the plaintiffs did not interpose any such objection, and, therefore, we shall consider the point.

Testimony was submitted in behalf of the defendant to the effect that when one of the plaintiffs' representatives called at the defendant's place of business in Chicago and solicited its business, he stated that the plaintiffs were manufacturers. There are a number of statements in the letters of the plaintiffs to the defendant which would lead the latter to conclude that such was the status of the plaintiffs and that they were going to make up the hosiery which was the subject of this contract, but we do not consider the fact that the plaintiffs were not manufacturers as material in this case. The contention now sought to be made by the defendant on this ground is, apparently, an afterthought on its part. Williams testified that he visited the plaintiffs at Mifflintown, Pa., in February, and that he complained at that time that the prices the plaintiffs were asking for his hosiery were too high, for the defendant could purchase as good or better for less money, and that one of the Nestlers then told him that one of the plaintiffs' salesmen, who had called on the defendant, had been overcharging the defendant a dollar a dozen, which overcharge they had been turning over to the salesmen. Ennis, the president of the defendant company, testified that he did not know that the plaintiffs were jobbers, marketing the product of the Juanita Hosiery Mills until Williams told him of the situation after he returned

from his trip East. Williams testified that one of the Nestlers showed him through the plant of the Juanita Hosiery Mills when he was East, but he did not then know that it was not the plaintiffs' plant, and that he first learned that the plaintiffs were a jobbing concern after he came back. He says this knowledge came to him, and thus through him to the defendant, some time in the month of May. But the defendant did not seek to cancel the order it had given the plaintiffs at that time. It did not make any such move until after the middle of June, and even then not a word appears in its letter of cancellation claiming that it had been misled by the alleged misrepresentations now relied upon, or that such misrepresentations had caused or would cause it any damage. Under the circumstances, we do not consider the point well taken.

It is contended that the court erred in giving two instructions. Rule 8 of the municipal court provides: "Objections to the giving or refusing of oral instructions to the jury must be specific." The record discloses that the court asked counsel, "Have you an objection to those two instructions?" and counsel answered, "To those two instructions." No specific objections being made, the matter may not now be reviewed.

It is further contended that if the plaintiffs were injured by the defendant's breach of contract, the plaintiffs were bound to use reasonable care in mitigating the damages, and that there can be no recovery of damages which might have been prevented by a reasonable effort on the part of the plaintiffs. The Uniform Sales Act, section 64 [Cahill's St. ch. 121a, ¶ 67], provides:

"(1) Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for nonacceptance.

"(2) The measure of damages is the estimated loss

directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract.''

Here, there is no evidence in the record, even tending to show that the plaintiffs should, or could, have mitigated their damages, and as the burden of proving those facts was upon the defendant, who breached the contract, the contention is untenable. *Ryan v. Miller,* 153 Ill. 138. *Howard Supply Co. v. Wells,* 176 Fed. 512; *Lillard v. Kentucky Distilleries & Warehouse Co.,* 134 Fed. 168; *Advance Veneer & Lumber Co. v. Hornaday,* 49 Ind. App. 83; *Norman v. Vandenberg,* 157 Mo. App. 488; *Easy Payment Co. v. Parsons,* 62 W. Va. 26; *Cornwall v. J. J. Moore & Co.,* 132 Fed. 868; *McDermott v. DeMeridor Co.,* 80 N. J. L. 67; *Sedro Veneer Co. v. Kwapil,* 62 Wash. 385; Sutherland Damages, sec. 438, 4th Ed. The case of *Cedar Rapids & I. C. Ry. & Light Co. v. Sprague Electric Co.,* 280 Ill. 386, states the rule as to the measure of damages, but does not consider the question upon whom is the burden of proof. The general rule is that the plaintiff is entitled to recover the total benefit of the contract, less expenses (Sedgwick on Damages, sec. 201, 9th Ed.); that, without evidence to the contrary, the amount which would have been made as profit if the contract had been kept, is the measure of damages if the contract is broken. Here, with the evidence as it is, the plaintiff is entitled to the excess of the contract price, that is, the amount over what it would have cost to perform, and as the evidence shows, and there is nothing to the contrary, that the profits of the contract were $3,000, being $2.00 a case on 1,500 cases, that was the proper measure and was the one evidently used in reaching both verdict and judgment.

For the reasons stated, the judgment will be affirmed.

*Affirmed.*

O'CONNOR and THOMSON, JJ., concur.