Capitol Paper Box, Inc., Appellee, v. Belding Hosiery
Mills, Inc., Appellant.

Gen. No. 45,890.

Opinion filed April 14, 1953. Rehearing denied May 1, 1953. Released for publication May 4, 1953.

HAROLD A. FEIN, of Chicago, for appellant.

MARCUS L. SILVER, of Chicago, for appellee.

MR. PRESIDING JUSTICE ROBSON delivered the opinion of the court.

Plaintiff, Capitol Paper Box, Inc., a corporation, sued to recover damages aggregating $4,881.46, against

defendants Belding Hosiery Mills, Inc., a corporation, and J. M. Hammerman, Inc., alleging breach of contract. A trial was held, without a jury, resulting in a finding and judgment for plaintiff as to a part of the claim in the sum of $2,207.46 against defendant Belding and a finding and judgment of dismissal as to the other defendant Hammerman. Defendant Belding appeals from the judgment. Plaintiff filed a cross-appeal as to the amount of the judgment.

Plaintiff relies on a contract between it and the defendant, dated December 1, 1948, under the terms of which plaintiff was to manufacture for defendant 500,000 hosiery boxes, as per specifications, at a price of $32 per thousand, delivery to be taken by defendant within one year. Plaintiff alleged that defendant breached the contract. Only 97,281 boxes were purchased by defendant and plaintiff had on hand 68,450 boxes, partially completed, and defendant failed to order and take delivery of the balance of 334,269 boxes. The damages claimed by plaintiff consisted of three items: $1,834.46 for the 68,450 boxes; $373 for labels on hand and not used, and $2,674 for loss of profit on the 334,269 boxes not manufactured.

The decision of the case resolves itself on the interpretation of Paragraph Two of the contract, which provided:

"Belding will from time to time detail specifications of the boxes to be produced and furnish specific instructions for delivery in respect to time and quantity."

Defendant contends that it is not liable because plaintiff breached the contract by its failure to manufacture the boxes according to the specifications prepared by it and sent to plaintiff. Plaintiff contends defendant breached the contract because the specifications submitted by it were unfair, unjust and would have increased the price of making the boxes far beyond the

70

cost as contemplated by the contract. Plaintiff further contends that the action of the defendant was premeditated with the object in mind of making it impossible for plaintiff to deliver the boxes so that defendant could contend that plaintiff breached the contract.

 In considering the contract, we must interpret it in its entirety, and we cannot alter a contract or make a new one for the parties to sustain the claim of one of them. *O'Donnell v. Snowden & McSweeney Co.,* 237 Ill. App. 156; *Arthur Rubloff & Co. v. Leaf,* 347 Ill. App. 191. In so doing we must give a reasonable interpretation rather than an unreasonable one which will not give one of the parties an unfair advantage over the other. *Llewellyn v. Board of Education,* 324 Ill. 254, 258; *Wilson v. Marlow,* 66 Ill. 385, 388.

The record reveals that plaintiff commenced delivery of the boxes under the terms of the contract in December of 1948, manufactured according to specifications that had been submitted, and continued such deliveries during January and February of 1949. In February defendant did not pay certain invoices of plaintiff and plaintiff wrote defendant about it. In response to this letter defendant wrote plaintiff that it had stopped payment of its bill because "we are not satisfied that the price charged is competitive. We would appreciate discussing this with you at your earliest convenience." Plaintiff continued to make delivery of the boxes until April of 1949 but received no payment for such deliveries. Further correspondence and conversations between representatives of plaintiff and defendant indicate that defendant would have paid the bills and accepted delivery of the balance of the boxes if plaintiff would have reduced its contract price, which it was contended was in excess of the prevailing market for hosiery boxes of similar specifications and quality. Plaintiff sued the defendant for deliveries made be-

tween January 28, 1949, and May 6, 1949, and recovered a judgment, which was paid by the defendant.

■ There is nothing in the contract that required plaintiff to reduce its prices from time to time, as reflected by the current cost of boxes on the open market. The price of $32 was a firm price for the period of the contract and this court cannot revise the contract and insert a provision requiring the parties to adjust to the price as the market changes. *O'Donnell v. Snowden,* 237 Ill. App. 156; *Arthur Rubloff & Co. v. Leaf,* 347 Ill. App. 191.

■ In April of 1949, defendant requested that the specifications of the boxes being made by plaintiff be changed in respect to the size, the weight of the board, type of board and the bottom wrap. It is interesting to note in this connection the testimony of Richard Hammerman, defendant's only witness, who was its secretary and in charge of its operation. He stated that when plaintiff refused to reduce the price of the boxes, "we then decided to ask him to make a better box at $32 per thousand," and new specifications were submitted "that called for the manufacture of a different box, different size, different paper, different board, a much superior box." The material cost under the new specifications would have been fifty per cent more than under the old specifications. Plaintiff offered to manufacture such a new box if defendant would pay the additional cost. This it refused to do. It is evident from the record that the defendant, when it could not get plaintiff to reduce the price of the boxes, deliberately requested it to manufacture a new box with materials so expensive that if produced by plaintiff it would have been at a loss.

■ Does Paragraph Two of the contract heretofore quoted require plaintiff so to do? Reasonably interpreted, there is no question but what defendant from time to time had the right to make reasonable

changes in the specifications, but it could not set standards in such specifications that required materials that were far in excess of the price of those set forth in the original specifications. The requirements of the plaintiff in its new specifications were not just and reasonable, and therefore not within the requirements of this clause of the contract. We conclude that the defendant in making such unreasonable specifications breached the contract.

■ The judgment entered by the trial court was for the expense of manufacturing, the profits on the boxes that had been partially completed and for the unused labels, but not for the loss of profits on those boxes not manufactured but which defendant had agreed to purchase. Section 64, paragraph 4 of the Uniform Sales Act, Ill. Rev. Stat. 1951, chap. 121½ [Jones Ill. Stats. Ann. 121.68, subd. (4)], provides as follows:

"If, while labor or expense of material amount are necessary on the part of the seller to enable him to fulfill his obligations under the contract to sell or the sale, the buyer repudiates the contract or the sale, or notifies the seller to proceed no further therewith, the buyer shall be liable to the seller for no greater damages than the seller would have suffered if he did nothing towards carrying out the contract or the sale after receiving notice of the buyer's repudiation or countermand. *The profit the seller would have made if the contract or the sale had been fully performed shall be considered in estimating such damages.*" (Emphasis ours.)

Under this provision it is clear that if defendant breached the contract, plaintiff was entitled to its loss of profits arising from such breach. Our courts have held that the measure of damages plaintiff can recover under such circumstances is the total benefit of the contract, less expenses; and without evidence to the

contrary, the amount which would have been made as profit if the contract had been kept. *Nestler v. Pure Silk Hosiery Mills*, 242 Ill. App. 151; *Anderson v. Pan American Motors Corp.*, 232 Ill. App. 27; *Barnett v. Caldwell Furniture Co.*, 277 Ill. 286.

██ Harry Burack, president of the plaintiff, who had knowledge of the facts, testified that the cost of manufacturing the boxes was $24 per thousand and that its profit on the boxes was $8 per thousand. This testimony stands alone and undisputed. Defendant contends that it is not the best evidence to prove the damages. Defendant did not cross-examine him on the question of cost or damages. If it desired, it could have ascertained if plaintiff's books contradicted the testimony of Harry Burack. The process of the court for this purpose was available to compel the production of such books. *Billeter v. Halsam Products Co.*, 313 Ill. App. 145. No evidence was introduced by the defendant that the cost of manufacturing the boxes and the profit contended for by the plaintiff of $8 per thousand on the boxes not manufactured, being the difference between the cost and the sale price to defendant, was not correct or unfair and unreasonable. The burden of proving that the damages were not correct or unfair was on the defendant that breached the contract. *Nestler v. Pure Silk Hosiery Mills*, 242 Ill. App. 151; *Ryan v. Miller*, 153 Ill. 138. In the absence of proof to the contrary plaintiff was entitled to recover from the defendant the sum of $2,674 as its damages for loss of profits on the boxes that were not manufactured. The trial court should have included this sum in the judgment entered by it.

██ In view of our findings the judgment of the trial court will be increased from $2,207.46 to $4,881.46. In all other respects the judgment of the trial court will be affirmed.

*Judgment increased from $2,207.46 to $4,881.46; in all other respects judgment affirmed.*

Schwartz and Tuohy, JJ., concur.