Wired Music, Inc., Plaintiff-Appellee, v. D. M. Clark, d/b/a Courtesy Auto Sales, Defendant-Appellant.

Gen. No. 11,397.

Second District, Second Division.

August 19, 1960.

Foster A. Smith, of Loves Park, for defendant-appellant.

Large, Reno, Zahm, and Folgate, of Rockford (H. Emmett Folgate, of counsel) for plaintiff-appellee.

SPIVEY, J.

The County Court of Winnebago County, in a non-jury case, entered judgment in favor of the Plaintiff for $302.95 for Defendant's breach of a written con-

tract. The action was brought to the County Court on an appeal from a Justice of Peace Court judgment in favor of the Plaintiff. There are no pleadings in the cause.

On appeal, Defendant contends that the Plaintiff failed to prove any damages and further, that by reason of the Plaintiff's obligation to mitigate damages, no damages could be shown.

There was no dispute in the evidence, and we have presented to us solely a question of the legal obligations of the parties. Plaintiff distributes recorded music to various locations in Rockford, by means of direct wires supplied by the local telephone company. The music is supplied from a tape and is transmitted to each customer over the telephone company wires to individual equipment in the various customers' locations. For Defendant's particular installation, Plaintiff charged $24.30 for the service monthly. This charge represents a line charge of $8.75 and profit of $15.55 to the Plaintiff. In addition, there was a connection charge of $7.50.

Defendant executed a contract with the Plaintiff requiring Plaintiff to furnish and Defendant to pay for three years' service. The contract provided that there could be no assignment without the written consent of the Plaintiff. There was also a provision that Defendant was not to be relieved of the obligation to make monthly payments if he discontinued service, but obviously, no contention is made that the damages awarded were pursuant to this clause, since the damages are less than the remaining contract installments.

After using the music and paying promptly for seventeen months of the three year contract, Defendant moved his business and discontinued the service. However, the tenant who rented the space formerly occupied by the Defendant requested and was refused the right to take an assignment of Defendant's con-

414

tract, and so, entered into another contract for the service at the same location. In this regard, it should be noted that this latter contract was for one year only and called for a five per cent increase in cost because it was for only a one year term, rather than a three year term. For this reason, Defendant contends that the Plaintiff fails to show damages for the breach of contract since Plaintiff will realize more revenue from Defendant's former location than Plaintiff would have received if Defendant were still the tenant.

There is no dispute between the parties that the Defendant breached his contract. The only question is the measure of damages. We said, in Meyer v. Buckman, 7 Ill.App.2d 385, 129 N.E.2d 603, "The measure of damages where one engaged in the performance of a contract of this type is wrongfully prevented by the other party from completing it is the difference shown by the evidence between the contract price and what it would have cost the Plaintiff to have done and completed the work according to the terms of the contract. Hayes v. Wagner (1906), 220 Ill. 256; Ryan v. Miller (1893), 52 Ill. App. 191; 153 Ill. 138; Kingman & Co. v. Hanna Wagon Co. (1898) 176 Ill. 545."

██ Plaintiff's testimony that his profit on this contract was $15.55 per month is not disputed in any way. This figure for nineteen months plus the disconnection charge of $7.50 was the judgment of the court, and according to our understanding of the law and uncontradicted evidence, was exactly right. The court reduced the total contract price by the expenses of $8.75 per month for line rental.

> "Our courts have held that the measure of damage plaintiff can recover under such circumstances is the total benefit of the contract, less expenses; and without evidence to the contrary, the amount which would have been made as profit if the con-

tract had been kept. Nestler v. Pure Silk Hosiery Mills, 242 Ill. App. 151; Anderson v. Pan American Motors Corp., 232 Ill. App. 37; Barnett v. Caldwell Furniture Co., 277 Ill. 286." Capitol Paper Box, Inc. v. Belding Hosiery Mills, Inc., 350 Ill. App. 68, 111 N.E.2d 858.

"The burden of proving that the damages were not correct or unfair was on the defendant that breached the contract." Behn v. Southern Pac. Co., 2 Ill.App.2d 62, 118 N.E.2d 625.

Finally, Defendant contends that Plaintiff is under a duty to mitigate damages and since he did supply music to Defendant's location and received greater revenue than Defendant's contract called for, Plaintiff has not been damaged. In this contention, the Defendant is in error. "It is inaccurate to say that plaintiff has a 'duty' for if he breaches the 'duty' by failing to mitigate damages, he incurs no legal liability. The law does not assess damages against him, it just fails to compensate him for any injury he reasonably could have avoided." Restatement of Contracts, 3336, Comment d.

Again, the evidence is uncontradicted that Plaintiff could supply any number of additional customers without incurring further expenses except for wire rental. If Defendant's contention were adopted by this court, it would have the effect of denying to the Plaintiff the benefit of his bargain. This case is not at all like the situation where a Plaintiff has one house to rent or one car to sell or a fixed quantity of personal property or real estate. Here, Plaintiff has so far as the evidence shows, an unlimited supply of music, limited in its distributions only by the number of contracts which Plaintiff can secure. "One who has a parcel of real estate cannot multiply it. If he retakes possession, he has regained usually the full consideration for which he parted with it. But one who

manufactures an article capable of infinite production destroys new outlets with full profits when he reclaims and resells his products." Electrical Products Corporation of Colorado v. Mosko, 88 Colo. 447, 297 P. 991.

The so-called rule of "avoidable damages" if applied in this case would serve to deprive the Plaintiff of the true measure of damages. "The rule, however, has never been carried to the extent of requiring the injured party to surrender important and valuable rights." Pittsburgh, Ft. W. & C. R. Co. v. Reno, 22 Ill. App. 470.

■ The guiding rule and the basic principle is that compensation is the general purpose of the law in fixing the measure of damages. Williston and Thompson, Williston on Contracts, Revised Edition, Par. 1338. But much careless language has pervaded judicial opinions dealing with the element of damages. Trouble is created when this careless language, used for instance in a case involving the sale of a single unique parcel of land, is again used to define the rights and duties existing by virtue of a contract to sell limitless quantities of taped music.

It is true that after a breach of contract, damages may be reduced by another sale of the article which was the subject of the breach. But this rule should be limited in its application to those situations where the innocent party will not lose any valuable rights under the contract. We are unable to say that the music sold in the location that Defendant abandoned could not have been sold but for the breach of the Defendant. And so we distinguish for the purposes of fixing damages, between the types of sales involved. We cannot remake the contract from one of a term of three years to that of a contract from month to month. Here, the evidence shows that the Plaintiff received five per cent per month less on a three year contract than he is receiving on the one year contract with the

customer who rented the premises abandoned by the Defendant. In effect, Plaintiff has purchased, by this discount given, the right to call for the money equivalent to performance for a three year term. He acquired his right to call upon the Defendant to perform for three years and not just the right to supply music to a particular location for three years. Obviously, Plaintiff's stimulus is the expectation of a profit rather than a maudlin gratification from having supplied music in a particular place. We have mentioned "profits" several times as being the desire of the Plaintiff, and profits may be recovered in a proper case. "It (profit) can well be a just measure of damages where the product involved is in itself for sale on the market and, as a matter of fact, there is little difference between that and the general rule that the measure of damages is the difference in value between what is tendered and what was agreed to be delivered. There is also an area within which courts have at times as a matter of justice resorted to loss of profit as a measure of damages when there is no other measure or other damages are difficult to prove. Whatever may be the inducement, the purpose of the court is always to find a measure of damages which will be fairly compensatory to the vendee, and not unjust to the vendor." Flug v. Craft Mfg. Co., 3 Ill.App.2d 56, 120 N.E.2d 666.

Here, the proof of the loss was precise and whether we call damages profit or the difference between the contract price and the cost of performance, in this case, they are the same.

The judgment of the County Court of Winnebago County is affirmed.

Judgment affirmed.

CROW, P. J. and WRIGHT J., concur.