Illinois Structural Steel Corporation, Plaintiff-Appellant, *v.* Pathman Construction Company, Defendant-Appellee.

(No. 57706;

First District (5th Division)—September 27, 1974.

Brown, Rosenthal, Carnow, Seeskin and Mulack, of Chicago (Donald S. Carnow and Morris A. Seeskin, of counsel), for appellant.

No appearance for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

This case involves a contract action in which plaintiff, a subcontractor, sued defendant, the general contractor, for $19,365.80, the amount allegedly due and owing on· the subcontract. Defendant counterclaimed against ·plaintiff for damages ostensibly arising from plaintiff's alleged delay in furnishing the required steel. After a bench trial, the court entered judgment in favor of plaintiff for $19,365.80 plus interest and costs. The court also entered judgment for defendant on its counterclaim

for $19,365.80 plus interest and costs. Plaintiff is appealing only from the adverse judgment entered against it on the counterclaim. Defendant did not cross-appeal nor file an appearance or brief.[1]

On appeal plaintiff contends that (1) the court improperly treated defendant's counterclaim as one for liquidated damages; (2) the damages were not foreseeable; and (3) the damages were speculative.

Defendant had a contract with the United States Air Force to construct a combination dining, administration and living facility at Chanute Air Force Base, Rantoul, Illinois. On or about December 16, 1966, plaintiff and defendant entered into a written subcontract by which plaintiff was to supply structural steel for this project at a contract price of $42,540. Subsequently this amount was increased by $1,460. Under this subcontract time was considered of the essence,[2] and plaintiff expressly agreed to perform in accordance with a "critical path schedule" provided for this project.[3] Evidence was presented which demonstrated that although plaintiff eventually supplied the steel required, there were delays in delivery of critical steel, and that delivery was not made in accordance with the "critical path schedule." The steel delivered late was principally to be used for the central administration area. The general contract defendant had with the Air Force called for completion within 330 days and had a penalty clause if more than 330 days were needed. Although 330 days were not needed to build the dormitory wings, it was estimated that the full time period was required for the

---

[1] "Although it has been held that that fact alone is sufficient to permit a reviewing court to summarily reverse the judgment of the trial court, the ends of justice are better served if litigation is determined according to the substantive rights of the parties and not by procedural default. As a general rule the trial court's judgment should not be reversed except after consideration of the merits of the appeal." *Lynch v. Wolverine Insurance Co.*, 126 Ill.App.2d 192, 193, 261 N.E.2d 466; *In Re Estate of Silverman*, 6 Ill.App.3d 225, 285 N.E.2d 548.

[2] Clause 14 of the subcontract states as follows:
"It is expressly UNDERSTOOD AND AGREED by and between the parties hereto that time is and shall be considered the essence of the contract on the part of said Sub-contractor, and in the event that the Sub-contractor shall fail in the performance of the entire work to be performed under this contract, by and at the time or times herein mentioned or referred to, the said Sub-contractor shall pay unto the said Contractor, as damages, all such actual damages or liquidated damages suffered by the Contractor by reason of such default; and the said Contractor shall have the right to deduct from any moneys otherwise due or to become due to the said Sub-contractor, or to sue for and recover compensation or damages for the non-performance of this contract at the time or times herein stipulated or provided for."

[3] A "critical path schedule" is a schedule which is determined by getting information from each of the subcontractors and each of the trades with precise information as to when their drawings will be ready, when material will be on the job, and when it will be in place.

central area, thus the prompt delivery of steel was critical. Since plaintiff is not contesting the trial court's finding of liability for delay, we will only set forth the evidence presented on the issue of damages.

William Pathman, defendant's president, was the sole witness to testify on the issue of damages. He noted several items of damage caused by plaintiff's delay in delivering structural steel to the central area. First, the lack of steel for this area meant that work could not continue as planned in this part of the project. In order to keep the work progressing as a whole and to keep the men working (especially to keep the gang of bricklayers on the job and to prevent their disbanding), it was necessary to begin the masonry work on the dormitory wings sooner than the "critical path schedule" called for. The general contract with the Air Force required this masonry work to be carried out under certain temperature specifications. Therefore, because this masonry work was being begun earlier than anticipated, occurring late in winter and in early spring, temporary enclosures had to be built. The total cost of these enclosures was $36,962.64. Mr. Pathman attributed only 50% of this cost, or $18,481.32, to plaintiff's delay since some of the enclosures would have been necessary anyway. He further itemized the costs making up this figure (i.e., labor, material, propane gas, insurance and taxes on labor, overhead and profits). In conjunction with this testimony defendant introduced records, including daily time sheets, listing the employees and showing their number of hours on each type of work with respect to the enclosures.

Pathman also explained that as a result of starting the masonry walls before doing work which would otherwise have been done, it became necessary to bring in by hand all of the required stone fill for use within the buildings. Instead of dumping by truck inside the building, the stone had to be dumped outside the building and carried in by hand. Defendant introduced a summary, prepared from payroll records, indicating a cost including markups of $20,386.22. On cross-examination Pathman was not sure if this figure represented excess costs.

As further damages, Pathman cited an increase in overhead costs due to finishing beyond the 330-day period, although no penalty was assessed under the general contract with the Air Force. These costs were in large measure due to the fact that defendant was still working on the job all the way through the end of 1967, primarily on the center core area. He stated that monthly costs in the field, without any allowance for overhead, was $5,768. For the 4 months, including overhead and profit at 10% each, the figure came to $27,917.12.

Pathman also referred in his testimony to seven invoices which were billed to plaintiff and had not been paid. These invoices were introduced

in evidence. They covered purchases of steel to cover shortages by plaintiff and corrections of work in the field made by defendant (*i.e.*, correcting improper fabrication of structural steel and repainting the steel when necessary). The invoices totaled $2,126.96. During the period that defendant was expecting the structural steel to arrive, it became necessary to protect the ground floor of the food and administration building from freezing. Pathman estimated that based on the approximately 24,000 square feet of floor area involved and a comparison with the average cost incurred on other jobs, it cost defendant $7,200. No supporting data was introduced in evidence on this item.

Finally, Pathman noted damages due to wasted crane time and crews standing idle due to improper shipments, shortages and missing items. No exact figure was given for this damage. Plaintiff did not introduce any testimony nor any exhibits to rebut the above evidence.

The court, in ruling for defendant on its counterclaim, stated:

> "On the other hand, I also find on the countercomplaint that there was a delay and a breach of contract by virtue of the delay under the terms of that very same contract and the general understanding of the parties.
>
> Now, the proof of costs or damages in connection with this delay are not sufficiently specific for the court to be able to allocate in dollars and cents each and every item. I find that the delay did at least occasion a loss to the defendant for the amount claimed by the plaintiff, and I am setting off that amount as against the amount owed to the plaintiff."

OPINION

■■ Plaintiff initially contends that the court improperly treated defendant's claim as one for liquidated damages and argues that "under Illinois law, damages are said to be liquidated where they can be determined from the contract itself or from the contract and the rules of law applicable thereto, and are unliquidated where it is necessary to introduce evidence before plaintiff can prove its case." With this statement we agree, but we do not find that it is in conflict with any actions taken by the court. Reading the record as a whole, the court did not rely on any theory of liquidated damages. Instead, it explicitly required defendant to submit proof of actual damages sustained by plaintiff's delay. Moreover, the court in its findings made express reference to defendant's proof on the issue of damages. Therefore, we find the court properly treated defendant's claim as one for unliquidated damages.

Plaintiff next argues that the damages proven were not foreseeable. These damages may be categorized as relating to (1) the temporary

enclosures; (2) defective shipments and delays in shipments; (3) changes in the sequence of construction; and (4) the added length of time necessary to complete construction.

In *Sitnick v. Glazer*, 11 Ill.App.2d 462, 467-68, 138 N.E.2d 84, the court, quoting from 25 C.J.S. *Damages* § 24 (1966), discussed the general standard for damages:

> " 'As a general rule  *  *  *  the damages to which one party to a contract is entitled because of a breach thereof by the other are such as arise naturally from the breach itself, or such as may reasonably be supposed to have been within the contemplation of the parties at the time of making the contract as a probable result of a breach thereof  *  *  *.
>
> In the application of the rule it is held that the parties will be presumed to have contemplated that the party injured by the breach of the contract would sustain such damages as would fairly and substantially, in the usual course of things, result from such breach, in the light of all the facts known or which should have been known to them  *  *  *.
>
>  *  *  *  It is not required that the parties shall have considered the consequences at the time of making the contract, but the consequences must be such as the parties may fairly be supposed to have considered, or at least would have considered as flowing from a breach of the contract if they had then been informed of all the facts.' "

In addition to the general knowledge of this business by the parties at the time of contracting (and plaintiff acknowledged in its brief that it was generally involved in this type of construction activity), it must be remembered that the parties expressly agreed that time was of the essence, that plaintiff would be liable for actual damages resulting from delay,[4] and that plaintiff would comply with the "critical path schedule." Furthermore, it is a general rule of law that a party may recoup all expenses reasonably incurred in mitigating damages. (15 I.L.P. *Damages* § 94 (1968).) If defendant didn't finish construction within 330 days, it was subject to a per diem penalty under the general contract with the Air Force.

In reviewing the damages claimed, we conclude that they were either foreseeable and were such as would naturally arise from plaintiff's delay, or they were reasonably incurred in an effort to mitigate damages. In *Board of Education v. United States Fidelity & Guaranty Co.*, 115 Ill.App.2d 416, 253 N.E.2d 663, a claim for damages due to the cost of

---

[4] Clause 14, *supra*, n.2.

constructing similar temporary enclosures was presented. The enclosures were made necessary because the critical subcontractor had also been late in deliveries. The court found that the general contractor's expenditures for temporary enclosures were a proper element of damages.

■■ The invoices stemmed directly from defective shipments by plaintiff and therefore naturally arose from plaintiff's breach of contract. As to the other items of damage claimed, all arose directly due to the delay in delivery of structural steel and to the deviations from the "critical path schedule." In light of the fact that the parties expressly agreed that time was of the essence and that plaintiff expressly agreed to be bound to the "critical path schedule," we hold that the damages alleged and proved were foreseeable.

■■ Finally, plaintiff avers that the damages proved were speculative and that the proof was insufficient. In *Tri-County Grain Terminal Co. v. Swift & Co.*, 118 Ill.App.2d 313, 322, 254 N.E.2d 311, it was stated:

> "Whenever the fact of injury or damages has been proved with reasonable certainty, some uncertainty as to the amount of damages sustained is not sufficient ground to set aside a jury verdict awarding damages. A party cannot be permitted to escape liability for his wrongful acts simply because the plaintiff's damages are difficult to prove. The 'best evidence' which the nature of the subject will permit in such cases is sufficient to sustain a jury award."

■■ Nor can it be considered inadequate that Pathman was the only witness to testify on this issue. In *Board of Education v. United States Fidelity & Guaranty Co.*, the court in discussing this issue stated:

> "However, in Meyer v. Buckman, supra, the court upheld the proof of damages, where the plaintiff was the only witness to testify as to his prospective profits. And in Capitol Paper Box, Inc. v. Belding Hosiery Mills, Inc., 350 Ill.App. 68, 111 N.E.2d 858 (1953), the court held that the testimony of the president of plaintiff corporation was sufficient to sustain a recovery for loss of profits. In the instant case the testimony of Anko's corporate officers afforded a sufficient basis by which the probable profits could be estimated with reasonable certainty." 115 Ill.App.2d at 430.

■■ Some of the damage, by its very nature, required estimation. Although the proof as to a few of the items was inadequate, we find that there was evidence presented which would afford a sufficient basis to assess damages with reasonable certainty in an amount greater than $19,365.80. Further, we note that plaintiff did not introduce evidence contradicting defendant's proof on the amount of damages. Since the

finding of the trial court was not manifestly erroneous and was supported by the evidence, the judgment is affirmed. *Schatz v. Abbott Laboratories, Inc.,* 51 Ill.2d 143, 281 N.E.2d 323.

Affirmed.

BARRETT and LORENZ, JJ., concur.